## CLARK, *Adm'r, v.* MANCHESTER.

A municipal corporation, in the absence of a statute creating the liability, is not liable for an injury resulting from a neglect of a public corporate duty, from the performance of which no special benefit or advantage, pecuniary or otherwise, is derived.

When an injury results from negligence in the management of corporate property used for business purposes, and from which profit and advantage are derived, the corporation is liable in the same way that an individual would be liable for negligent acts.

The corporation owes no duty to one trespassing upon its land, or who is there without license or invitation ; and if a person, without such license or invitation, goes upon the land for mere pleasure or to gratify curiosity, and there meets with an injury consequent upon the corporation's negligent management of its property, he has no remedy unless the negligence is of so gross a character as to amount to a wanton infliction of injury ; and no distinction is made in favor of an infant child so receiving an injury.

| 62 | 577 |
| 66 | 97 |
| 66 | 514 |
| 62 | 577 |
| d68 | 118 |
| 62 | 577 |
| 69 | 82 |
| f69 | 363 |
| 62 | 577 |
| 70 | 107 |
| 70 | 109 |
| 70 | 111 |
| 70 | 520 |
| 70 | 525 |
| 62 | 577 |
| 71 | 284 |
| 71 | 286 |
| j71 | 372 |
| 62 | 577 |
| 72 | 154 |
| 72 | 156 |
| 72 | 164 |
| 72 | 376 |

By the act of July 18, 1879, rights of action for tortious personal injuries were made to survive, and an action for an injury arising from a defective or insufficiently guarded highway, and resulting in death, can be maintained against the town or city where the highway is, under that statute; and in such case the notice required by G. L., *c.* 75, *ss.* 7 and 8, is not necessary.

Damages for injuries resulting in death, and provided for by the act of 1879, must be confined to injuries suffered by the decedent before death, and cannot include the loss to relatives by reason of his death, nor extend to any injury beyond his life.

CASE, for injuries resulting in the death of the plaintiff's intestate. Plea, the general issue. The plaintiff offered to prove the following facts: In 1863 the defendant city established a reservoir of water for public use in extinguishing fires. The reservoir was on land of the defendant, bounded easterly and northerly by public streets, and enclosed by a substantial fence. The defendant maintained the reservoir in this way until the latter part of 1878, when it was abandoned, and the city began filling the excavation with earth, that the land might be put to more valuable purposes. To facilitate the filling of the reservoir, the fences around it were removed. In September, 1879, the southerly and easterly parts for a considerable distance had been filled, but a portion of the excavation still remained, containing water to the depth of four feet. The water in the reservoir and the process of filling it had a tendency to attract children there, and in the summer of 1879 young boys had fallen into the water several times. North-west of the reservoir land was an enclosed field, where entertainments and sports, like ball-playing and other games, were carried on, and a foot-path led from the street east of the reservoir across the northerly part of the reservoir land towards the play-ground. In the afternoon of September 27, 1879, the plaintiff's boy, a little less than four years old, and living with his parents about one hundred and fifty feet south-easterly from the reservoir, went with his older brother, following a band of music with a crowd of other boys, to the play-ground. In the crowd about the gate of the play-ground the brothers became separated. The older boy went home without his brother, and the younger one, wandering by the reservoir excavation, fell into the water and was drowned. There was no license or invitation to the child to go there. The plaintiff claims that there was no fault or negligence on the part of the boy or his parents; that the defendants managed the filling of the reservoir in a negligent and improper manner by leaving it for so long a time unprotected by any fence or guard; and that the injury resulting in death was caused by such negligent management.

The defendants moved for a nonsuit, which was denied. The question whether, on proof of the facts stated, the action can be maintained, is reserved.

*Sulloway, Topliff & O'Connor*, for the plaintiff.

*A. F. Stevens* and *W. R. Patten*, for the defendants.

ALLEN, J.   In the absence of a statute creating the liability, no action can be maintained against a municipal corporation for an injury arising from the neglect of a public corporate duty, from the performance of which the corporation receives no special benefit, pecuniary or otherwise. *Edgerly* v. *Concord*, 8 *ante*. But when the neglect is not of a public but of a private duty, and is in respect to the care and management of property from which a pecuniary or other special advantage is received by the corporation, it is liable for an injury arising from the neglect in the same manner that individuals would be liable. Cool. Torts 619, 620; 2 Dill. Mun. Cor. 981; *Hill* v. *Boston*, 122 Mass. 344, 359.

So long as the defendants maintained and used the reservoir for the public purpose of extinguishing fires within the city, they were exercising a public corporate duty, and for an injury arising from any neglect in the performance of that duty they could not have been liable. But, at the time of the injury complained of, the reservoir had not been used for any public purpose, nor in fact for any purpose, for nearly a year. Its use as a reservoir for water had been abandoned, and the defendants were engaged in filling the excavation so as to use the land for some valuable and more profitable purpose. The city was dealing with and managing the land as a private owner deals with and manages his own property. Under such circumstances the defendants would be liable for an injury resulting from their want of care, in the same manner and to the same extent that an individual would for his negligent acts in the care and management of his property.

But the owner of land, for whatever purpose it may be used, is under no obligation to keep his premises in a safe condition for the prevention of injury to trespassers and persons intruding, without license or invitation expressed or implied. He owes them no such duty. For injuries received by strangers upon his premises through his want of care, he is liable only to those who may at the time be there by invitation, by license express or implied, or upon legitimate errand. *Beck* v. *Carter*, 68 N. Y. 283, citing *Blyth* v. *Topham*, 2 Cro. Jac. 158; *Pierce* v. *Whitcomb*, 48 Vt. 127; *Sweeny* v. *Old Colony R. R. Co.*, 10 Allen 368; *Tobin* v. *Railroad Co.*, 59 Me. 183. The plaintiff's intestate was not upon the land of the defendants, where he was drowned, by express or implied invitation, for any purpose. The fact that the ground was unenclosed, and that the deceased and people at their pleasure went there without objection, was not an invitation; and from that fact alone no license to go there can be inferred. Cool. Torts 606; *Severy* v. *Nickerson*, 120 Mass. 306; *Hargreaves* v. *Deacon*, 25 Mich. 1. The fact that the person who suffered injury and death was an infant

child does not change the question, nor create a liability against the defendants where none would have existed in case of an injury to an adult person under similar circumstances. The defendants owed no special duty to the child, straying from its parents, guardians, and attendants, beyond what they owed generally to all classes of persons, and were not bound to make special provision against its falling into mischief when wandering at random upon the corporation's land. The duty of protecting the child and saving it from injury and destruction is not shifted from the parents or its proper guardians to the municipality where it resides by its chance escape from their care. *Gillespie* v. *McGowan*, 100 Pa. St. 144.

On the facts stated, the action cannot be maintained.

*Case discharged.*

The foregoing opinion was given at the June term, 1882. Since that time the plaintiff has amended his declaration by the addition of two counts; and the question is reserved, whether the action can be maintained upon the facts alleged in either of the new counts, and if so, what the rule of damages may be.

ALLEN, J. The first of the plaintiff's amended counts, after reciting the material facts offered to be proved under the original declaration, alleges that the place of the reservoir, at the time of the injury, was an unguarded excavation, pit, and trap, near to the public street and the residences of a large number of people including that of the plaintiff, and the water therein, together with the work of filling the excavation, was calculated to and did allure to it young children; that the defendants had knowledge of the situation, and these facts were a license and invitation to the plaintiff's child to come there; and that, neither he nor his parents being in fault, he went there, fell into the pit, and was drowned.

If the facts stated in this count were proved, they would not establish the defendants' liability. The excavation for a reservoir was not made and filled with water for a trap, but for lawful use by the defendants on their own land. The work of filling it was not carried on for the purpose of attracting boys there and giving them sport and pleasure, but for the improvement and beneficial use of the city's land. The averment of license and invitation to the child to go there is one of argument by inference from the facts stated, and the facts positively averred do not warrant and support the inference. The fact that children went to the reservoir pit from curiosity or for pleasure, without objection of the defendants, was not an invitation nor a license to go there. The child was not upon the land by invitation, nor under circumstances which made it the duty of the defendants to protect him. He was there to gratify his curiosity, or for mere pleasure, and the defendants owed him no special duty. It was not a case of set-

ting a trap for the children, nor one of wantonly and knowingly leading them into danger and this one to destruction. It was the ordinary case of a land-owner managing, within the boundaries of his own land, his own property in his own way for his own use and benefit; and though in doing this he might find occasion to dig excavations, construct reservoirs, provide fish-ponds, plant and cultivate fruit-trees, erect and maintain useful structures, instruments, and machinery, all of which are alluring, attractive, and dangerous to children, yet it could not be claimed that he must constantly guard these things against the approach of persons coming without license or invitation, and attracted by mere curiosity or pleasure, or suffer in damages for any injury they might receive. The rule that the owner of land may manage it in his own way for his own benefit, and owes no duty to those who come upon it for no business purpose, but without license express or implied, is too well established to need further comment, or to warrant a departure from it. The decision first given in this case is not reversed; and upon the facts alleged in the first count added by amendment, the action cannot be maintained.

The second amendment adds a count which states a case for an injury from an insufficiently guarded highway. On this amendment the question arises whether it is a necessary prerequisite to the maintenance of an action for an injury from an insufficient highway resulting in death, upon the statute of 1879 (Laws of 1879, *c.* 35), that the plaintiff shall first file in the city clerk's office his claim, under oath, setting out the time, place, and character of the injury, and the amount of damages demanded, as provided in Gen. Laws, *c.* 75, *ss.* 7–9.

In the law of 1879 there are no provisions requiring the preliminary statement under oath to be filed as a condition of the suit, and there is no reason to infer that the legislature intended to couple with the statute a provision of such vital importance without in some way expressing that intention. The plain language of the statute is, that an executor or administrator may have an action in all cases of death from the wrongful act or neglect of another, where, if death had not ensued, the person injured would have been entitled to recover damages for the injury. No distinction is made against cases of death from an insufficient highway, and no conditions are imposed in such cases not applicable to all cases of death from the wrongful act or neglect of another. The statute is, that " then, on the death of such person, his executor or administrator may, by suit brought within two years of such death, recover damages for the injury." He could not, in case of instantaneous death, bring a suit " then, on the death" of the person, if he must wait for thirty days after his claim has been filed to enable the town or city to investigate it, and he would not in such a case have the full period of two years from the death, given by the statute, in which to bring the suit.

A construction of the statute involving so manifest an inconsistency could not have been intended by the legislature. The suit to be brought to recover damages is, from its plain and natural as well as technical meaning, an action at law in the court, and not a sworn statement in writing of the time, place, and character of the injury to be filed in the town- or city-clerk's office, nor a petition to the court for leave to file such a statement, because the complainant was unavoidably prevented from filing it within ten days, and the two years within which suit may be brought are not, either by express language, implication,, or. inference, cut short at the beginning by any requirement or condition of filing the sworn statement of the injury. When the law requiring a statement of the injury to be filed as a precedent condition of bringing and maintaining a suit for damages was enacted, no provision was made for the case of an injury resulting in death, for no remedy by law existed for such a case. When, by the law of 1879, a remedy was provided, the condition of filing the sworn statement, required by Gen. Laws, *c.* 75, in cases of injuries upon highways, was not annexed to the statute, nor was there any adaptation of one statute to the other; and it cannot be presumed that the legislature, without plain and express words to that effect, intended to limit the remedy given by an application of the provisions of an existing statute, which, in too many cases, would defeat the remedy provided. The law requiring the sworn statement of the injury as a condition of bringing a suit does not apply in cases arising under the statute of 1879, providing a remedy for injuries resulting in death; and on the second amended count this action can be maintained.

The rule of damages depends upon the construction to be given to the statute of 1879, the question being whether damages are given to the surviving relations of the deceased for the loss and injury to them from his death, or for the injury to the deceased which caused his death; whether for the injury resulting from death, or for the injury resulting in death. The statute is, that the executor or administrator may recover damages for the injury, when the person injured, if death had not ensued, would have been entitled to recover damages. The damages are for the widow and children, in equal shares; and if there be no child, wholly to the widow; and if no widow, to the heirs of the deceased according to the law regulating the distribution of intestate estates. In this case the father of the deceased child will be entitled to the recovery.

Prior to the statute of 1879, no action for an injury resulting in death could be maintained unless commenced before the death of the injured person. The right of action for personal injuries did not survive. *Wyatt* v. *Williams*, 43 N. H. 102; *Vittum* v. *Gilman*, 48 N. H. 416; *Sawyer* v. *Railroad*, 58 N. H. 517 The English statute of 1846, known as Lord Campbell's act, was, in its first section giving the right of action, substantially like our statute ;

but a second section provided that "in every such action the jury may give such damages as they may think proportional to the injury resulting from such death to the parties respectively, for whom and for whose benefit such action shall be brought." This statute, and those of many of the states which have copied the English statute, expressly provide that the damages shall be for the loss to the survivors resulting from death. The prospective value to them of the life of the deceased, had he escaped death, is the measure of damages adopted by these statutes.

While our statute reserves the damages recovered for the benefit of the surviving relations of the deceased, it omits the provision for assessing the damages upon the injury to them as a basis of recovery. The ground of recovery in our statute is the injury to the deceased which resulted in or caused his death. "When the death of a person is caused by the wrongful act or neglect of another, which, if death had not ensued, would have entitled the person injured to recover damages therefor, then, on the death, &c., the executor or administrator may recover damages for the injury." From a reference in the context to the "person injured," and by the natural interpretation of language, the "injury" must mean the injury which resulted in or caused the death of the person. Damages are given for the injury the same as they would have been if death had not ensued, and that injury must be the injury to the deceased preceding and resulting in his death. The title to the act is, "An act in relation to actions for personal injuries," and these words most naturally apply to the injuries directly inflicted, and on account of which the actions are brought. The synopsis of the subject-matter of the statute, printed as a head-note or index, is, "Damages for personal injuries resulting in death may be recovered by executors;" and the marginal note is the same.

The rule which requires that construction which will most nearly effect the intention of the legislature and will best suppress the mischief which the act was designed to remedy, points directly to the injury resulting in death as the one for which damages are to be given. In the case of *Sawyer* v. *Railroad, ante,* the court was very earnestly urged in argument to overrule the doctrine of *Wyatt* v. *Williams* and *Vittum* v. *Gilman,* that a cause of action for personal injuries did not survive. After argument, decision, and re-argument, the doctrine was adhered to as one too long established and too well settled to be overthrown by anything short of legislative action. The final decision in *Sawyer* v. *Railroad* was given in March, 1879, and the statute in question was enacted at the next session of the legislature, in July, 1879. It could not well be made, by inference from circumstances, to appear more plainly or pointedly, that the legislature intended that rights of action for personal injuries resulting in death should survive, and that the mischief intended to be suppressed by the act was the loss by death of a right of action before complete.

Viewed in its language, in the light of its history and environment, tested by the apparent will of its makers and the purpose of its enactment, it must be considered that the construction of the statute in respect to the matter of damages is, that they are to be given for the injury to the deceased which resulted in and caused his death. They are for the injury which, if death had not ensued, would have entitled the person injured to recover damages therefor. The cause of action was not lost by death, but survives, and the rule of damages is not changed by death. If the plaintiff establishes by evidence the liability of the defendant, he can recover damages on the same grounds that the injured person, had he escaped death, might recover for the injury.

Under the Massachusetts statute of 1842, by which actions of tort for personal injuries were made to survive, it was decided that in case of instantaneous death there could be no action, for no injury preceded death in point of time, or the injury was merged in the death. *Kearney* v. *Railroad*, 9 Cush. 108. Under a similar statute in Tennessee the same decision was made. *Louisville &c. Railroad* v. *Burke*, 6 Cold. 45. This case was subsequently overruled in *Nashville &c. Railroad* v. *Prince*, 2 Heisk. 580;—see, also, *Foulkes* v. *Railroad*, 9 Heisk. 829. In Connecticut, under a statute providing for the survival of actions of tort for personal injuries, it has been decided that the action can be maintained in case of instantaneous death. *Murphy* v. *N. Y. & N. H. Railroad*, 30 Conn. 184. The New York statute is construed in the same way. *Brown* v. *Railroad*, 22 N. Y. 191. A construction which denies the action in case of instantaneous death rests upon purely metaphysical and technical grounds, and, if insisted upon, leads to unjust discrimination by defeating the operation of the statute in a large class of meritorious cases. Practically and in substance, though the intervening time may be very brief, an injury causing death or resulting in death must precede death in point of time. And in all cases of injury occasioned by the wrongful act or neglect of another resulting in death, the cause of action survives, and damages for the injury are given to the executor or administrator for the benefit of the survivors named in the statute.

*Case discharged.*

STANLEY, SMITH, and CLARK, JJ., did not sit: the others concurred.