Grafton,
June, 1894.

## MITCHELL *v.* BOSTON & MAINE RAILROAD.

Evidence of the existence and use of a foot-path across a railroad yard is
competent on the question of negligence in the management of a locomo-
tive at that point.

A master is responsible for injuries caused by a negligent failure to inform
his servant of dangers incident to the business to which third persons are
exposed, which are known to him and unknown to the servant.

When accessible witnesses of a transaction in dispute do not testify, either
party may argue that they were not called by his opponent because their
testimony would have been unfavorable.

A verdict will not be set aside for the reason that the jury were urged to
draw from admitted or established facts an unwarranted inference.

A railroad company is bound to exercise ordinary care to avoid injury to one
wrongfully upon its tracks, and is responsible for culpable ignorance of his
dangerous situation.

CASE, for injuries caused by negligence.   Trial by jury and
verdict for the plaintiff.   The accident occurred in the defend-
ants' railroad yard in the village of Woodsville.   The plaintiff's
evidence tended to show that there was on May 21, 1888, and
for a long time had been a foot-path across the yard which, with
the defendants' knowledge, their servants and people generally
were accustomed to use as they had occasion; that on that day

the defendants' cattle train stood in the yard across the path at the place where on Mondays it usually stood, and where hogs, sheep, and calves were sometimes loaded and unloaded; that the plaintiff, following the path, and crossing two of the tracks, went to the train and got upon a car to see some cattle for which he was negotiating; that the track he last crossed was about six feet from the car, and upon it, six or eight rods from the plaintiff, stood a locomotive engine called the Profile; that as the cattle train was about starting, the plaintiff got down from the car, stepped back so far that one foot was inside the rail of the adjacent track, and while there standing, and just as Moulton, a cattle dealer, was getting on the moving train, was struck and injured by the Profile; that the bell of the Profile was not rung, or other warning given of its approach; that it was the custom to ring the bell, and the defendants' rules required it to be rung before starting the engine; that the plaintiff had worked in the yard, knew the custom, and relied on the signals being given.

It appeared from evidence adduced by the defendants, that the fireman of the Profile was not on the engine at the time of the accident, but was engaged in moving a switch; that the engineer was sitting in his proper place, where he could not see the plaintiff, and that he did not see the plaintiff until after the accident. He testified that he had been at work for the corporation sixteen years; had run a locomotive twenty years; was familiar with the business done in the yard at that time of day; was not familiar with the crossing [the foot-path], but had noticed people dodging across the track there; when there was a train they dodged round, and when not they walked as people generally do.

The defendants objected to evidence of the existence and use of the foot-path, to evidence that their servants were present and knew of the loading and unloading of stock in the yard at the place above mentioned, and at the close of the testimony moved for a verdict. The court overruled the objections and denied the motion, and the defendants excepted.

The defendants called six witnesses who were apparently within hearing of the bell at the time the Profile started, only two of whom testified that the bell was rung. In the closing argument the plaintiff's counsel commented on the fact that the defendants did not call as witnesses the fireman of the Profile, the conductor of the cattle train, or Moulton, and argued that if they had been called they would have testified that the bell was not rung; he also argued that out of the whole population of Woodsville, the defendants were able to produce but two witnesses who could testify that the bell was rung, and asked the jury to draw an inference from the absence of others, to which the defendants excepted.

The defendants requested the following instructions: (1) If the jury find that the plaintiff was a trespasser in going upon the defendants' tracks, or was there as a mere licensee without the defendants' invitation, he cannot recover unless they find that his injury was wantonly inflicted, or that the engineer might have prevented the injury by the exercise of reasonable care after discovering that the plaintiff was in danger. (2) If the jury find that the defendants passively permitted people to pass and repass at the place where the plaintiff was injured, that that is not holding out an invitation to him or the public to come upon the tracks, and the plaintiff stands even then no better than a trespasser. (3) If the plaintiff was a trespasser upon the defendants' tracks, they owed him no duty except the negative one not wantonly or willfully to do him an injury. (4) If the defendants' engineer on the engine was in the exercise of ordinary care in the discharge of his duty, and the plaintiff was a trespasser on the defendants' grounds, the plaintiff cannot recover.

The court, after defining "ordinary care" and "negligence" and illustrating their meaning, instructed the jury, among other things, in substance as follows: "The defendants' servants in moving the locomotive were bound to exercise ordinary care to prevent injury to those who they knew, or by ordinary care would have learned, were in their way. They had a right to move it over the track, but in doing so they were bound to exercise ordinary care to prevent injury to others who were in its way, whether they were there rightfully or wrongfully. If they knew or ought to have known that the plaintiff was in a place where he was likely to be injured by the locomotive in passing along the track, it was their duty to exercise ordinary care to prevent such injury, whether he had a right to be there or was a mere trespasser. If they did not know of the plaintiff's presence, and by the exercise of ordinary care could not have learned it, they would be justified in acting on the supposition that he was not there. The evidence relating to the foot-path across the yard, the travel over it and the character of the travel,— that is, whether permissive or wrongful,— is to be considered in determining whether the defendants' servants knew or reasonably ought to have known of the plaintiff's presence, and is to be weighed on the question whether they exercised ordinary care. The plaintiff was bound to exercise ordinary care to protect himself from injury. He was bound to use his faculties and take notice of all circumstances affecting his safety which were within his knowledge, or which by ordinary care he could have learned, and to use all the means to protect himself from injury that persons of average prudence would use under like circumstances. If he failed to do this, he was negligent. It was the duty of both parties to exercise ordinary care equally and reciprocally;

neither was exonerated from the obligation by the negligence or misconduct of the other. If the defendants by their servants exercised ordinary care,—such care as persons of average prudence would have exercised under the same circumstances,—they performed their duty and your verdict will be in their favor, and it will be unnecessary for you to consider the case further. If you find that the defendants did not exercise ordinary care, you must consider the conduct of the plaintiff. Did he exercise ordinary care,—such care as persons of average prudence would have exercised under the same circumstances? If he did not, and his injury was caused by his negligence, or by his negligence and that of the defendants combined, your verdict will be for the defendants. If he did exercise such care, he is entitled to your verdict." To these instructions and to the omission to give those requested the defendants excepted. To the instructions relating to the foot-path and the travel over it, they excepted on the special ground that there was no evidence that the engineer knew of the travel.

*Drew, Jordan & Buckley*, for the defendants. (1) The plaintiff was a trespasser upon the track of the defendants. His own testimony discloses his purpose in being upon the tracks. The plaintiff went upon the defendants' premises for a purpose purely his own, without license or permission from the company, either express or implied. He was not there for the purpose of transacting any business with the defendants, but for the purpose of examining certain stock *en route*, upon one of the defendants' cars. If there was a path such as that described by the plaintiff (a controverted question of fact), used by the public to cross and recross between Main and Ammonoosuc streets, and if this circumstance amounted to an invitation by the defendants to the public so to use their track (a mooted question of law), yet the plaintiff does not bring himself within the scope of the invitation, which, being implied, must be strictly construed; for he went upon the defendants' tracks and cars for the sole purpose of transacting business of his own, of which the defendants and their agents knew nothing. Every person who enters upon the property of a railroad company, either its tracks, or its cars, or its engines, without due license and authority, is, so long as he remains there, to be regarded as a trespasser. *Lary* v. *Railroad*, 78 Ind. 323; Buswell Pers. Inj. 97, and note 4.

"There was no express invitation by the defendant or its agents. The plaintiff was not using the way for the purpose of transacting any business with the defendant or its agents, or of coming upon the property of the defendant for the purpose of doing anything except to cross its road-bed to go to school. . . . A mere permission or license from the defendant to cross the

track is not an invitation." *Wright* v. *Railroad*, 142 Mass. 296, 300; *Wright* v. *Railroad*, 129 Mass. 440; *Gaynor* v. *Railroad*, 100 Mass. 208, 214; *Ill. Cent. Railroad* v. *Godfrey*, 71 Ill. 500. The fact that people at their pleasure crossed and recrossed the defendants' yard without objection did not amount to an invitation, and from this fact no license can be inferred. *Clark* v. *Manchester*, 62 N. H. 577, 579. The plaintiff was, therefore, a trespasser, and having failed to show that the injury was wantonly inflicted, or that the engineer, after discovering the danger, could have averted the accident, has not made out his case; and the motion for a nonsuit should have been granted. *Frost* v. *Railroad*, 64 N. H. 220, 221, 222. Said *Clark*, J., in delivering the opinion of the court in that case: "A trespasser ordinarily assumes all risk of danger from the condition of the premises; and . to recover for an injury happening to him he must show that it was wantonly inflicted, or that the owner or occupant, being present and acting, might have prevented the injury by the exercise of reasonable care after discovering the danger." *Donaldson* v. *Railroad*, 18 Ia. 280; *Palmer* v. *Railroad*, 31 Am. & Eng. R. C. 364.

(2) For the same reason the defendants' motion for a verdict should have been allowed.

(3) The court therefore erred in refusing the first instruction requested by the defendants, viz. : "If the jury should find that the plaintiff was a trespasser in going upon the defendants' tracks, or was there as a mere licensee without the defendants' invitation, he cannot recover unless they find that his injury was wantonly inflicted, or that the engineer might have prevented the injury by the exercise of reasonable care after discovering the plaintiff was in danger." This instruction would have been an exact statement of the law, being in the very language of *Frost* v. *Railroad*, *supra*, changed only in person and tense. The presiding justice refused so to charge the jury, but instead thereof, among other things, said : " In this case both parties were present and acting at the time of the injury,— the plaintiff was there in person, and the defendants were there by their servants. As you have seen from what I have already said, their duty was to exercise ordinary care, equally and reciprocally; neither was exonerated from his obligation to use such care, by the negligence or misconduct of the other. Both being present, the law places on each the duty of exercising ordinary care,— as much upon one as the other." And in the *resumé* of the charge, the defendants' liability is made to depend upon the jury's answer to the following question: " Did the defendants, by their servants, exercise ordinary care from the time the locomotive was started until it caused the plaintiff's injury " ? Such is not the law of this state, as appears from cases above cited.

It is not the rule. On the contrary, the law as laid down in the defendants' request is sound. *Chicago, etc., R. R.* v. *Hedges,* 25 Am. & Eng. R. C. 550. The court's charge imposes upon the defendants the same duty to care for the plaintiff's safety, though a trespasser, as upon himself. Such is not the law. Railroad companies are not bound to anticipate such dangers to trespassers upon their tracks. *Philadelphia, etc., R. R.* v. *Hummell,* 44 Pa. St. 375; *Farve* v. *Railroad,* 42 Fed. Rep. 441; *Mc-Allister* v. *Railway,* 19 Am. & Eng. R. C. 108; *Terre Haute, etc., R. R.* v. *Graham,* 12 *Ib.* 77; *Mobile & Ohio Co.* v. *Stroud,* 31 *Ib.* 443. They have the right to presume that the track is clear, being entitled to a clear right of way (*Omaha, etc., R. R.* v. *Martin,* 19 *Ib.* 236; *Baltimore & Ohio R. R.* v. *Maryland,* 19 *Ib.* 83), and are under no duty to give a signal at a private right of way. *Johnson's Adm'r* v. *Railroad,* 13 *Ib.* 623; *a fortiori,* at a path where trespassers sometimes cross.

In *Dahlstrom* v. *Railway,* 35 Am. & Eng. R. C. 387, the trial court charged the jury substantially as did the trial court in the case at bar, viz.: "The jury are instructed that, although a person may be improperly or unlawfully upon a railroad track, that alone will not discharge the company or its employees from the observance of reasonable care; and if such person is run over by the train and killed or injured, the company will be responsible if its employees could have avoided the accident by the exercise of reasonable and ordinary care and watchfulness." *Norton,* C. J., delivering the opinion of the court, said: "The instruction is erroneous in not being qualified by the addition of the following: 'After discovering the danger or peril of the injured person on the track at the time, or if, by the exercise of ordinary diligence, his peril could have been discovered in time to have avoided injuring him.'" This was the very qualification requested by the defendants in the first request for instructions; and it was error to refuse to make the qualification.

(4) The defendants' second request for instructions was as follows: "If the jury should find that the defendants passively permitted people to pass and repass at the place where Mitchell was injured, that that is not holding out an invitation to the plaintiff or the public to come upon the tracks, and that the plaintiff even then stands no better than a trespasser." Such is the law applicable to the case at bar, and the instruction should have been given, or some instruction of like import; the refusal to do so was error. *Clark* v. *Manchester, supra.* Mere passive acquiescence by the company in the use of the track does not amount to an invitation or license. *Wright* v. *Railroad, supra; McLaren* v. *Railway,* 8 Am. & Eng. R. C. 217; *Yarnall* v. *Railway,* 10 *Ib.* 726; *Finlayson* v. *Railroad,* 1 Dill. 579; *Baltimore & Ohio R. R.* v. *Maryland, supra.*

(5) The defendants' third request was as follows: "If the plaintiff was a trespasser upon the defendants' tracks, they owed him no duty except the negative one not to wantonly or willfully do him injury." This instruction the presiding justice refused to give, but instructed the jury in his charge as follows: "The defendants' servants were bound to exercise ordinary care in moving and controlling their locomotive, the Profile, at the time of the accident, to prevent injury to those who they knew were in their way, or, by the exercise of ordinary care, should have known were there. They had a right to move it over the defendants' track, but in doing so they were bound to exercise ordinary care to prevent injury to others who were in its way, whether there rightfully or wrongfully." This instruction was erroneous, in that it gave the jury to understand that the law requires of the defendants the same degree of care, at any point on its line, as would be owing to one at a highway crossing, or in any other place where the rights of the parties are equal and mutual; and also left with the jury the impression that railway companies are bound to anticipate trespassers, and therefore bound to the exercise of ordinary care not to do them injury before the danger is discovered. The rule is otherwise. *Frost* v. *Railroad, supra; Gaynor* v. *Railroad, supra; Yarnall* v. *Railroad, supra; Carter* v. *Railroad,* 15 Am. & Eng. R. C. 414; *Mason* v. *Railway,* 6 *Ib.* 1; *Lary* v. *Railroad, supra.*

A child of four years, while walking on the defendants' track, was run over. *Ames,* J., delivered the opinion, and said: "The defendant company owed him no duty, except the negative one not maliciously, or with gross and reckless carelessness, to run over him." *Morrissey* v. *Railroad,* 126 Mass. 377, 380. "As the plaintiff was on the track without right, and as there was no evidence of willful or reckless misconduct on the part of the defendant or its agents, the court properly ruled that the action could not be maintained. Judgment on the verdict." *Wright* v. *Railroad, supra.* See, generally, as to duty to trespassers: 2 Wood's R'y Law, s. 320, and notes; 1 Thomp. Neg. 439-462.

(6) The refusal to instruct according to the defendants' fourth request was clearly erroneous. The defendants could only act through their engineer, on the engine at the time (so far as this case is concerned); and if he was in the exercise of ordinary care and the plaintiff was a trespasser, the latter cannot, according to the rule in this state, and upon all of the foregoing authorities, recover of the defendants. *Clark* v. *Manchester, supra; Frost* v. *Railroad, supra.*

(7) The defendants at the close of the charge, took exceptions thereto as follows: "To that portion of the charge relating to the degree of care due a transgressor; to that portion relating to the path, as there is no evidence that Engineer Clifford knew

of travel across the yard; to the matter of license and invitation; to that part as to reciprocal duties on the part of the defendants and the plaintiff,—that neither can be discharged therefrom; to that part relating to the relative location of the plaintiff and locomotive; to what the defendants were bound to know and to do; to the last proposition stated as a summary on the question of liability; and to the omission to give the instructions requested by the defendants." These exceptions raise substantially the same questions as the requests for instructions; and upon the foregoing authorities, they should be sustained. The defendants' motion to set aside the verdict should have been allowed, for the same reasons and upon the same authorities.

(8) The case of *Bissaillon* v. *Blood,* 64 N. H. 565, cited by the plaintiff, is not in point. The plaintiff in that case was an irresponsible child, in a public street, where he was not a trespasser, and where his rights were equal to and mutual with those of the defendant. The case at bar presents no such state of facts; and the rule of law contended for by the plaintiff's counsel, and stated in that case and others cited by the plaintiff, has no application here. The decision in *State* v. *Railroad,* 52 N. H. 528, is put squarely upon this ground of a common right in the plaintiff and the defendants to be at the place where the accident happened, *Sargent,* C. J. (*p.* 556), saying: "The intestate had a right to be in the highway at the crossing; he had the same right to pass there that the railroad train had." And he puts the decision upon the ground, *inter alia,* that the accident happened at a public crossing where the defendants had every reason to apprehend accident and danger. Hence the rule of mutual and reciprocal care, contended for by the plaintiff, applies; but in this case the facts are entirely different in character, the rule has no application, and the court erred in making it the test of liability in this case.

(9) "In the final argument of the plaintiff's counsel he commented upon the fact that Moulton, the fireman of the Profile, and conductor of the cattle train (M. H. Perkins) had not been called as witnesses by the defendants, and argued that if they had been called they would have testified the Profile was down where plaintiff says it was and its bell was not rung before starting." From the punctuation and construction of the foregoing sentence the casual reader would infer that Moulton was the fireman of the Profile. Such is not the case. John Furber was the fireman (as appears from other parts of the testimony, uncontradicted); and the Moulton referred to is Herbert B. Moulton, of Lisbon, who was accompanying a car-load of stock which he had on the cattle train. These unsworn statements of counsel as to what certain witnesses would have testified to if they had been called, constitute a flagrant violation of the rule which

this court has been endeavoring to enforce in a long line of decisions, from *Tucker* v. *Henniker*, 41 N. H. 317, to *Baldwin* v. *Railway*, 64 N. H. 596. It was a breach of the rule of the very worst character. If counsel had been put under oath he could not have testified to it, but he got it to the jury by a wrong. If the plaintiff's counsel was sincere in what he said, and really believed that these parties, if called as witnesses, would have testified as he claimed before the jury, then to entitle him to comment upon their testimony, it was his duty to have produced it; if he did not believe it, then certainly it was a palpable wrong to allow it to be urged upon the jury. The parties were as accessible to the plaintiff as to the defendants, so far as anything in the record, or evidence, appears, and so in point of fact; and it was the plaintiff's duty to produce the parties upon the stand if he desired the benefit of their testimony, rather than wait until his final argument, when the defendants had no chance to meet the wrong, and then state to the jury what these persons would have testified to if called. What rule of law imposes upon the defendant the duty to call witnesses in the plaintiff's favor or behalf? And if the plaintiff omit to call them himself, shall he be permitted to state to the jury, in his final argument, what they would have testified to if called? What presumption of law or fact was there in the case at bar that Herbert B. Moulton, or any of the other witnesses mentioned by the plaintiff's counsel, would have testified as stated? He is, so far as anything appeared at the hearing, or anywhere on the record, an entirely disinterested party. Is a party bound to call as a witness every person who may by any possibility have some knowledge of the facts, at the peril, if he fail, of having the adverse party put into the mouths of such uncalled persons the facts that best suit the purposes of his case? What conceivable duty rested upon the defendants to call Mr. Moulton, more than upon the plaintiff? None, certainly, if Mr. Moulton would have testified as the plaintiff's counsel stated to the jury. If Moulton would have so testified, and the plaintiff failed to call him as a witness, can counsel be permitted to reap benefit from his neglect, and by a wrong, produce in the minds of the jury an impression prejudicial to the defendants' cause? Can counsel state to the jury what uncalled parties would have testified to if called? If so, then the rule, followed out to its logical result, would overthrow the established practice of the courts, dispense with all witnesses whatever, permit counsel to state to the jury what witnesses would testify to if present, send the case to the jury on counsel's statements, and compel an acceptance of the verdict, be that what it would. What Moulton knew, or would have testified to, was not in evidence, and statements of counsel cannot make it evidence. *Tucker* v. *Henniker*, 41 N. H. 317, 325. "The

wrong was not rectified, the error was not acknowledged, the testimony was not withdrawn, and the plaintiff did not obtain explicit instructions from the court to the jury to disregard it." *Baldwin* v. *Railway*, 64 N. H. 596, 598. The only instructions given to the jury to disregard statements of counsel were confined in their application directly to the other breach of the rule on the part of the plaintiff's counsel, viz., that out of the whole population of Woodsville the defendants were able to produce only two witnesses who could testify that the bell of the Profile was rung. The court finds that "the verdict was not affected by this circumstance." But it is not found as a fact that the first breach of the rule of argument, with reference to what Moulton, and Furber, and Perkins would have testified to if present, was harmless. The verdict should therefore be set aside, and a fair trial had. *Cross* v. *Grant*, 62 N. H. 675, 687. *Beattie* v. *Railway*, 41 Vt. 275, relied on by the plaintiff to support misconduct of counsel, is entirely without precedent, and was decided upon the particular facts of that case alone, as, indeed, all cases of alleged misconduct must be. It is not an authority in this case in any particular. The question in that case was as to the condition of the track before and after the accident; the defendants' section-foreman was shown by the evidence to have been present with the only witness for the plaintiff when that witness examined the track before the accident, and therefore to be able to contradict him if his testimony was false; furthermore, the foreman was shown to be accessible to the defendants. Under these circumstances the plaintiff's counsel was permitted to argue, from the defendants' neglect to call its foreman in contradiction, that the testimony of the plaintiff's witness was true. In the case at bar there were no such facts. Moulton was not shown to have been accessible to the defendants; nor was it made to appear whether he had any knowledge whatever of the position of the engine Profile, nor whether its bell was rung; he was not an employee of the railroad, and therefore if there is any presumption that a servant, when called by his master to testify, will commit perjury, the presumption cannot arise, so far as Moulton is concerned. The plaintiff's counsel was not content to ask the jury to draw an inference unfavorable to the defendants from the fact that Moulton was not subpœnaed,— a wrong of sufficient magnitude,— but went even farther, and put into Moulton's mouth testimony, which, if Moulton would have given it, made it the plain duty of the plaintiff to call him, and which, whether Moulton would or would not have given it, worked a grievous wrong upon the defendants. Having failed to call Moulton, the plaintiff cannot avail himself of the testimony which the unsworn statements of counsel attributed to him.

*Smith & Sloane* and *Bingham, Mitchell & Batchellor*, for the plaintiff.

*Drew, Jordan & Buckley,* for the defendants on their motion for a rehearing. (1) There was no claim on the part of the plaintiff that he was invited by the defendants to go into their yard. He was there, at most, simply by passive permission, and could not, as we claim, under the most strained construction of the plaintiff's evidence have stood any better than a mere licensee. The defendants did not invite the plaintiff to go into the yard, and he was not there for the purpose of transacting any business with the defendants. He went there from motives of private convenience, in no way connected with business or other relations with the defendants. "One is not invited into danger when his entrance upon dangerous premises is simply not opposed and prevented." Cool. Torts 606. "The fact that the ground was unenclosed and that the deceased, and people at their pleasure, went there without objection, was not an invitation, and from that fact alone no license to go there can be inferred." *Clark* v. *Manchester*, 62 N. H. 577. The failure, if there was any, to prohibit the use of the yard in the way that the plaintiff claims he was using it was not an invitation to so use it. *Reardon* v. *Thompson*, 149 Mass. 267. In *Galligan* v. *Company*, 143 Mass. 527, a suit for damages resulting to a child from falling over an embankment, the court says: "Merely abstaining from driving the child off is not an invitation which would impose any duty or responsibility for the condition of the lot."

*Morrissey* v. *Railroad*, 126 Mass. 377, was a suit brought to recover damages for injury to a child while crossing the defendants' track in a foot-path commonly used by travelers to go from one street to houses situated upon the opposite side of the railroad. There was evidence that the whistle was not sounded nor the bell rung in approaching the crossing or path. The court said: "The plaintiff at the time of the accident was a mere intruder and trespasser upon the railroad track. No inducement or implied invitation to him to enter upon it had been held out; he was neither a passenger nor on his way to become one, but was there merely for his own amusement, and was using the track as a playground. The defendant corporation owed him no duty except the negative one not maliciously or with gross and reckless carelessness to run over him."

The defendants claimed that the plaintiff was a trespasser; that they owed him no duty except the negative one not to wantonly injure him after discovering his danger, and requested the court so to instruct the jury, which the court refused to do, but did instruct the jury upon this subject as follows: "They

had the right to move it [the engine] over the track, but in doing so they were bound to exercise ordinary care to prevent injury to others who were in its way, whether there rightfully or wrongfully." We submit that the instructions given were wrong upon reason and authority. "One is not under obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to go upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must use ordinary care and prudence to render the premises reasonably safe for the visit." Clark v. Manchester, supra; Frost v. Railroad, 64 N. H. 220; Carleton v. Company, 99 Mass. 216; Galligan v. Company, supra; Morrissey v. Railroad, supra; Reardon v. Railroad, supra; Evansville, etc., Co. v. Griffin, 100 Ind. 221.

In Hargraves v. Deacon, 25 Mich. 1, Campbell, J., says: "We have found no support for any rule which would protect those who go where they are not invited . . . from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant." Armstrong v. Medbury, 67 Mich. 250.

Is it not plain upon the authorities cited and numerous others with which the court is familiar, that there is, and must be, a different rule in regard to the duty owing from a defendant to a person invited upon premises and to a person who is a trespasser upon premises? This query is so obvious and plain that it cannot admit of any discussion. I suppose the trial judge fell into the error by undertaking to follow out the very subtle reasoning by which our court in Company v. Company, 62 N. H. 159, and other cases, has undertaken to eliminate the expressions of "gross negligence" and "willful injury," and to substitute therefor the term "ordinary care." The departure may be wise and perhaps an improvement upon the old methods of expression, but it is apparent that it is very likely to mislead not only the jury, but the court, unless it is understood as fully by every one and in the same sense as it was understood by the learned judge who rendered the opinion in that case. Whether the trial judge did or did not intend to state to the jury that the same care was due to a trespasser as to one rightfully upon the defendants' premises, makes no difference. The instructions given, laid down the rule to the jury for their conduct and guidance, that the same care was due to a trespasser as to an invitee. Can the court say that the defendants were not prejudiced by such instructions? It seems apparent that the jury must and necessarily would be misled by the instruction given, because it in terms eliminates all differences of degree as to the care due to persons upon the premises of another. The jury

must have understood that it made no difference as to why or how they are there, whether by invitation, passive permission, or against objection; whether they are at a place where the defendant has reason to expect persons may be, or at places where the defendant has reason to expect that no one will be. I suppose no one will contend that the proposition, nakedly stated as in the terms of the trial judge, without further elucidation, illustration, or explanation, is good law. It is a correct statement of the law, and a safe rule to guide the deliberations of a jury, if. at all, only when the jury have been made fully to understand that the term "ordinary care" means ordinary care under the particular circumstances of each situation, and it is very difficult to impress this important and essential fact upon the minds of the jury with sufficient distinctness and force to insure to parties justice at their hands, when undertaking to act under any such refined statement of legal principle.

(2) A verdict ought to have been ordered for the defendants. The theory of the law as well as the inherent genius of fair dealing and equity demand that legal rules governing the complex relations of. society and business are to be ultimately defined and established by the courts in which we are taught to feel and believe that all justice and equity reside. True, the determination of all questions of fact in proper cases is exclusively for the jury; but it is only within and upon the rules of law given them by the court. The question as to what shall or shall not constitute due care must be a question for the court. The minimum of conduct, so to speak, which shall constitute due care must be prescribed by the court. What does or does not constitute due care under given circumstances, within the rules established by the court as to what shall or shall not constitute due care, is for the jury.

In most jurisdictions it is held that it is the duty of persons entering upon the track of a railroad, even at highway crossings where the public and the railroad have equal right to be, to look and listen for approaching trains. It seems unnecessary to argue that the rule of duty would not be less stringent as applied to persons who went upon the tracks of a railroad in its yard, as mere licensees or trespassers. In the case of *Rodrian* v. *Railroad*, 125 N. Y. 526, the court said : "It has, in view of the decisions in this state upon the subject, become a postulate, that due care requires a pedestrian before crossing a railroad track to look in each direction to ascertain whether a train is approaching, and that the mere omission of the statutory signals by trainmen does not relieve the pedestrian from the imputation of negligence, if he fails on his part to look and listen. He cannot omit such a reasonable precaution in reliance upon the performance by the railroad company of its obligation to

give reasonable notice of the approach of the train. Whether the duty imposed upon the traveler has been discharged may be, and often is, a question involved in doubt. The evidence may justify opposing inferences. In such case the question is for the jury."

In *Railroad Co.* v. *Houston*, 95 U. S. 697, 702, *Field*, J., says: "The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track in order to avoid an approaching train and not to walk carelessly into a place of possible danger. Had she used her senses she could not have failed both to hear and see the train which was coming. If she omitted to use them and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others." In *State* v. *Railroad*, 76 Maine 357, *Walton*, J., says: "We must, therefore, regard it as settled law in this state that, in this class of cases, whether in form civil or criminal, the burden of proof is upon the party prosecuting to show due care on the part of the person injured or killed, at the time of the accident; or, in other words, that his want of due care did not contribute to produce the injury complained of. . . . It is claimed that no bell was rung or whistle sounded; and that in consequence of this failure, the deceased was not apprised of the approach of the train. The evidence seems to us to preponderate most overwhelmingly in favor of the fact that the bell was rung and the whistle sounded. But suppose they were not, still, it seems to us impossible to believe that the deceased undertook to cross the track in ignorance of the approach of the train. He was a man of mature years, and in the full possession of his faculties. His sight and hearing were good. He lived in the immediate neighborhood of this crossing, and must have been acquainted with the time and speed of the train. . . . If, under these circumstances, the deceased undertook to cross the track in ignorance of the approach of the train, the inference is irresistible that he did not exercise that degree of vigilance which the law requires. He could not have used his eyes nor his ears as the law requires him to use them. The fact must not be overlooked that the train was very near, as otherwise he would not have been struck by it. One in the full possession of his faculties, who undertakes to cross a railroad track at the very moment a train of cars is passing, or when a train is so near that he is not only liable to be, but is in fact, struck by it, is *prima facie* guilty of negligence; and, in the

absence of a satisfactory excuse, his negligence must be re-
garded as established. The excuse offered in this case is not
satisfactory.    The evidence so overwhelmingly preponderates
in favor of the fact that the bell was rung and the whistle
sounded that we cannot regard the alleged negligence of the
railroad company in these particulars as proved.   But if we con-
ceive that this was a question of fact for the jury, and that the
court has no right to interfere with their finding, still, the infer-
ence is irresistible that the deceased did not exercise that degree
of vigilance which the law requires, or he would have known of
the approach of the train without these signals. . . . But if he
did not have such notice ; if he drove on to that crossing in total
ignorance of the approach of a train ; then the conclusion seems
to us inevitable that he must have been exceedingly negligent
in the use of his eyes and ears."

In *Cullen* v. *Canal Co.*, 113 N. Y. 667, the court says : "It
seems very plain that the duty which rests upon a traveler in
approaching a railroad crossing, to look and listen, was not dis-
charged by the intestate.    It may be said that he was thrown off
his guard by not hearing the engine; by the omission of the
defendants' servants to ring the bell or sound the whistle ; by
the fact that engines or trains were seldom moved on this road
on Sunday ; and, in addition, it is urged that he could not have
looked south without partially turning around, and that if he
had seen the engine he would have difficulty in turning his
wagon in the highway at that point.    But we cannot listen to
these suggestions without opening the door to excuses which in
the end would subvert the rule which, on the whole, tends, we
think, to protect life, viz., that the omission of a railroad com-
pany to perform its duty, under circumstances like these, does
not justify a traveler on a highway in not observing care on his
own part by looking and listening before crossing a railroad
track in order to escape the danger of moving trains.    There is
no evidence that the intestate did look or listen. . . . Judgment
of nonsuit affirmed."

In the case at bar there is no question about the conduct of
the plaintiff.    He admits that he did not look toward the engine.
He testified, "We were facing the cattle train, my back toward
the track on which the engine was."    Applying the rule laid
down very generally in other jurisdictions to this case, judgment
should be ordered for the defendants.    *Penn. R. R.* v. *Beal*, 73
Pa. St. 504 ; *Reading, etc., R. R.* v. *Ritchie*, 102 Pa. St. 425.

In *Fletcher* v. *Railroad*, 149 Mass. 127, *Knowlton*, J., says : "As
a general rule, a person is not in the exercise of due care who
attempts to cross a railroad track without taking seasonable pre-
caution to assure himself by actual observation that there is no
danger from approaching trains.    It has been held in many cases

that he cannot properly trust his sense of hearing alone, but must use his sight as well, if it is reasonably practicable so to do. *Butterfield* v. *Railroad*, 10 Allen 532; *Allyn* v. *Railroad*, 105 Mass. 77; *Wright* v. *Railroad*, 129 Mass. 440; *Tully* v. *Railroad*, 134 Mass. 499; *Wheelwright* v. *Railroad*, 135 Mass. 225. This rule has been held applicable where the plaintiff's attention has been diverted or his view of a coming train has been obstructed by another train which has just passed." *Mayo* v. *Railroad*, 104 Mass. 137; *Allerton* v. *Railroad*, 146 Mass. 241; *Granger* v. *Railroad*, 146 Mass. 276; *Marty* v. *Railway*, 38 Minn. 108; *Schofield* v. *Railway*, 8 Fed. Rep. 488; *Brown* v. *Railway*, 22 Minn. 165; *Mo. Pac. Ry. Co.* v. *Moseley*, 57 Fed. Rep. 921.

We would call the attention of the court specially to the case last cited as being almost identical in facts with the case at bar. Moseley, while walking on the track in the company's yard, where people were accustomed to walk daily, was injured by the engine backing upon him, without sounding the whistle or ringing the bell. "It is, however, urged," says *Sanborn*, J. (*p.* 925), "that the proximate cause of the injury was the failure of the servants of the defendant to ring the bell of the engine, and not the carelessness of the plaintiff in walking on the track without looking for the engine. It is said that, if the bell had been rung, the plaintiff would have heard it, and have avoided the danger, and that he had a right to rely on the expectation that the defendant's servants would comply with the ordinance and ring the bell, and therefore he should be permitted to recover. This position is untenable.

"First: The question here is not whether the negligence of the defendant or that of the plaintiff is the more proximate cause of the injury, but whether or not the negligence of the plaintiff directly contributed to it. An effect often has many proximate, and many remote, causes. If the negligence of the plaintiff was one of the proximate causes of the injury,—if it directly contributed to the unfortunate result,—he cannot recover, even though the negligence of the defendant also contributed to it. In such a case the plaintiff can recover only when the defendant's negligence is the only proximate cause of the injury. No argument is required to show that the negligence of the plaintiff in this case directly contributed to the injury. It was negligence for him to step upon this track without looking to the west; it was negligence for him to walk upon the track 300 feet without looking behind him. If he had looked to the west or the rear he would have seen the coming engine, and would not have been injured. In the absence of his own negligence, no act of the defendant would have harmed him.

"Second: The negligence of the plaintiff was the more proximate cause of the injury. The proximate cause is not always,

nor generally, the act or omission nearest in time or place to the effect it produces. In the sequence of events there are often many remote or incidental causes nearer in point of time and place to the effect, than the efficient moving cause, and yet subordinate to it, and often themselves influenced, if not produced, by it. Thus a defect in the construction of the boiler of an engine may long exist without harm, and yet finally be the proximate cause of an explosion, to which the climate, through the negligence of the engineer, and other incidental causes nearer by years to the effect, may contribute. That negligence is the proximate cause of an injury, from which the injury might and ought to have been foreseen, or reasonably anticipated, under the circumstances, as its probable result. That negligence which sets in motion a train of events that in their natural sequence might and ought to be expected to produce an injury, if undisturbed by an independent intervening cause, is the proximate cause of that injury.

"It goes without saying that injury from engines or cars can be, and ought to be, foreseen or anticipated as the probable result of walking across or upon a railroad track in frequent use, without looking both ways and listening for approaching engines. This is demonstrated by the fact that so universal is this experience that it has become a settled rule of law that such action is negligence. It was the negligence of this plaintiff in walking on the railroad track without looking to the west that put in motion the train of events that led to this disaster. He voluntarily placed himself in a dangerous situation. He knew his danger. The servants of the defendant were not advised of his position or of his danger, and they had a right to rely upon the expectation that he would obey the law and discharge his duty. His greater knowledge imposed upon him the duty of greater care than was required of them. The natural and inevitable result of his continuance upon this track was a collision with an engine, unless some new cause intervened to prevent it. Without the intervention of such cause, the accident was only a question of time. The engine was certain to come. The only chance for his escape was that some independent cause, such as his own care and action, or the defendant's watchfulness, would intervene to turn aside the natural sequence of events, and to take him from the track before the engine passed over it. No independent cause did intervene, and his own negligence was permitted to work out the unfortunate result. It is certain that this result could not have been attained unless the plaintiff had first been negligent. It may be true that it would not have resulted if the bell had been rung. But, if this be so, the failure to ring the bell was not the independent intervening cause; it was entirely dependent for its evil effect upon the precedent negligence of

the plaintiff in walking along the track without using his eyes.
If he had not been careless, he would not have been on the track,
and the failure to ring the bell could not have injured him.   The
negligence of the defendant's servants was at most concurring
or succeeding negligence, which simply failed to interrupt the
natural sequence of events, and permitted plaintiff's breach of
duty to work out the disastrous result of which it was the pri-
mary and efficient cause.   The injury was the natural result of
the plaintiff's own carelessness, and the jury should have been
instructed to return a verdict for the defendant."

The position taken by the court and the reasoning offered to
sustain it, in relation to the exercise of due care on the part of
the plaintiff in standing in a place which he must have known
was dangerous, without exercising any of the precautions which
common prudence dictates, seem entirely unique in a judicial
statement of the mutual rights and duties of parties.   The posi-
tion taken here, although not stated in so many words, is in fact
this : That in a situation where the law imposes upon two indi-
viduals the same degree of care, a plaintiff may be excused from
the performance of his legal duties upon the assumption that the
defendant will perform his.   If this is true why is not the con-
verse true, that the defendant may be excused from performing
his legal duties upon the assumption that the plaintiff will per-
form his?   If the jury could legally find that Mitchell was in the
exercise of ordinary care in placing himself in the dangerous
position without looking for the approaching engine, upon the
assumption that defendants would not start an engine without
ringing the bell, why had not the defendants a right to assume
that Mitchell would use his eyes to protect himself, and hence
be justified in not ringing the bell?   If one party can be ex-
cused from the exercise of ordinary care upon the assumption
that the other party will exercise ordinary care, that privilege
justly and equitably should belong as much to the defendant as
to the plaintiff.   But, in view of the doctrine laid down by the
opinion in this case, that is an exclusive right which belongs to
plaintiffs, and defendants must act upon the principle that plain-
tiffs have the right to omit the exercise of ordinary care upon
the assumption that defendants will and must always exercise
ordinary care.   The reply to this may be that this was a ques-
tion of fact for the jury.   That is true only as to the assertion
itself, not true upon any principle of law or equity which should
and does enter, theoretically, into the administration of the law.
A jury may find for a plaintiff without regard to the evidence,
because they are human, and sympathy and prejudice may con-
trol them instead of reason and right.   Courts, the only protec-
tion which the large and important business interests of the
country have against the fullest exercise of prejudice and sym-

pathy on the part of juries, also being human, can say that there is evidence sufficient to warrant the finding of a verdict for the plaintiff when there is not. We submit, however, that this is not a question which courts ought fairly to leave to a jury, upon the evidence submitted in this case. The plaintiff confessedly omitted one of the most reasonable and common precautions which ordinary prudence dictates. We feel that our court should adopt the safer and more just rule which obtains in other jurisdictions, and order judgment for the defendants. The question whether the bell was or was not rung was a proper question for the jury. The jury evidently found that it was not rung; and they must also have found that this was negligence on the part of the company. The plaintiff admitted that he did not look toward the engine. Now, in all candor and reason, was it not just as palpably the duty of Mitchell to look out for the engine, as it was the duty of the engineer to ring the bell? Can there be but one answer to this? If this is true, is there no power which can and will intervene between the sympathies of jurors and the rights of litigants, and make it certain that all parties shall have equal justice at the hands of our courts? If there is not, there is a most dangerous and fatal weakness which ought to be remedied.

(3) The plaintiff's counsel argued in the close that if the fireman of the engine, and the conductor of the cattle train, who were in the employ of the company, and also one Moulton, who was not in the employ of the company, had been called by the defendants, they would have given evidence in support of the plaintiff's position and claim. In the opinion the court says: "The evidence showed that the fireman of the Profile and the conductor of the cattle train were so situated that they might have heard the bell if it was rung; and there is no indication that they could have known anything else material and favorable to the defendants; they were the defendants' servants, and they might have been, but were not, called as witnesses. It is a just inference that, if called, their testimony would have been unfavorable to the defendants; in other words, that they could not testify that they heard the bell," citing *Cross* v. *Bell*, 34 N. H. 82, and cases cited. It is evident from an examination of the case and opinion that the court omitted entirely to pass upon the question whether such argument by the plaintiff's counsel in relation to Mr. Moulton was competent or incompetent. The authority cited shows conclusively that the matter was not considered by the court. The doctrine laid down in *Cross* v. *Bell* is where notice was given to a party to produce books which were in his possession and under his control; and it says that upon neglect to produce them, opposing counsel might fairly argue that if they were produced they would not help the other's

case. This may be regarded as an authority authorizing the line of discussion pursued by the plaintiff's counsel, so far as it applied to the conductor of the cattle train and the fireman of the locomotive, but it cannot be an authority which in any sense or by any fair intendment warrants such discussion in relation to Mr. Moulton, who was not in any way connected with the railroad, or under the control of the railroad any more than any other member of the public. Hence the whole of the discussion in the opinion in relation to what might have avoided the exception in *Bullard* v. *Railroad,* 64 N. H. 27, is entirely inapplicable; and we submit that unless the court has come to the conclusion that it is wise to abandon entirely the ground taken in that case and others in the same line, there is no justice or right in withholding from these defendants the benefit of those decisions. We submit that the very able discussion and presentation of the principle laid down in *Tucker* v. *Henniker,* 41 N. H. 317, and the reasons given in all of that class of cases in New Hampshire, not only warrant but demand that this verdict should be set aside.

CARPENTER, J. The evidence of the existence and use of the pathway across the railroad yard, and that at or near it animals were loaded upon or unloaded from the cattle train, was competent on the question of the defendants' negligence. Their knowledge of its existence and use was material, and the evidence tended to show their knowledge. Known public travel, whether licensed or unlicensed, across their tracks would affect the measure of the ordinary care required of them. The conduct of a person of average prudence in doing his lawful business is the legal standard of duty. Such a person running a locomotive engine would manage it with greater or less caution according as he is passing through a mob, over the crowded streets of a city, the less traveled highways of a village, the comparatively unfrequented country ways, or a territory where there is no crossing, and no reason to expect any one to be upon the track. The measure of his care would be proportionate to the danger of injury from the want of it. Knowledge that those who he knew were exposed to danger were wrongdoers, would not diminish his vigilance. He would, if he could, avoid doing harm to trespassers as well as to those who are exercising their lawful rights.

The objection to the instructions to the jury relating to the existence and use of the pathway, on the special ground that there was no evidence tending to show that the engineer of the Profile knew of the travel across the yard, is without foundation in fact. He testified in substance that he knew of the travel. Without his testimony the jury might, on the evidence of the

notoriety of the travel, properly find his knowledge. But the engineer's personal ignorance of the situation would not excuse the defendants. If they knew the use made of the pathway, it would not be important whether their servant, the engineer, knew it or not. If he knew it, and in view of it failed to act as a person of average prudence would, his individual fault was that of the defendants' servant for which they are responsible. If he neither knew nor reasonably could have known the situation, and was therefore personally without fault, the negligence was more immediately and directly that of the defendants in not informing him of the pathway and of its use. A master is as responsible for injuries caused by his negligence in not informing his servant of danger known to him and not known by the servant, as he is for injuries caused by the personal negligence of the servant. He is not less responsible for his own negligence than he is for that of his servants.

The motion that a verdict be directed for the defendants was properly denied. There was sufficient evidence upon which the jury might properly find that the defendants could, and that the plaintiff could not, have avoided the injury. A failure to ring the bell in accordance with the custom and in compliance with the defendants' rules was evidence of negligence, on their part. The jury might think and properly find that ordinary care required the fireman to be in his place on the engine when moving over the part of the yard used as a crossing, and that but for his absence the accident would not have happened. Whether a person of average prudence placed in the plaintiff's situation, possessed of the knowledge which he had of the custom and rule relative to ringing the bell before starting the engine, the general course of business in the yard and all the other circumstances, would have done as he did, was a fair question for the jury. It may be that upon it reasonable and fair-minded men might differ; but it cannot be declared that no reasonable man could find as the jury did. *Bridges* v. *North London Railway*, L. R., 7 H. L. 213, 233; *Metropolitan Railway* v. *Jackson*, 3 App. Ca. 193, 197; *Dublin Railway* v. *Slattery*, 3 App. Ca. 1155, 1197.

The question whether the bell was rung was a vital one. So far as the defendants' negligence was concerned, it was apparently the only fact in dispute. It appeared that the fireman of the Profile, the conductor of the cattle train, and Moulton, a dealer in cattle who had no connection with the defendants except as a patron, were within ear-shot, might have heard the bell if it was rung, and could have been, but were not, called as witnesses by either party. From a party's neglect to call accessible witnesses of the transaction in dispute it may justly be inferred that their testimony would do him no good. *Cross* v. *Bell*, 34 N. H. 82. It was competent for the plaintiff to argue, and ask

the jury to infer, that the fireman, conductor, and Moulton would not testify that they heard the bell. The fact that Moulton was not the defendants' servant affected, not the propriety, but the weight of the argument. It was open to the defendants to argue that the plaintiff had equal opportunity to call him, and would have called him if he could testify that he did not hear the bell. If surprised by the plaintiff's closing argument on this or any other point, the defendants, upon request, would have been permitted to reply, subject to the plaintiff's right to close. *Rogers* v. *Kenrick,* 63 N. H. 335, 341.

The statement of the plaintiff's counsel that, " out of the whole population of Woodsville " the defendants were able to produce but two witnesses to testify that the bell was rung, was not objectionable. It was merely a forcible expression of the presumption that the defendants called on the point all the witnesses they could procure and of the conceded fact that of the nine or ten persons shown to be within hearing, and of others who the jury might find on the evidence were within hearing, two only were produced to testify that they heard the bell. The jury had a view, and from the information thereby obtained in connection with the other evidence, might find it more probable than otherwise that many persons not mentioned in the testimony laid before them were within ear-shot of the engine, and would have heard the bell if it was rung. A verdict is not to be set aside for the reason that counsel urged the jury to draw from admitted or established facts an unwarranted inference. Such an argument is merely an erroneous statement of the law. Whether the inference can properly be drawn, is a question of law. Whether, if it lawfully may, it shall be drawn, is for the jury. *Dublin Railway* v. *Slattery,* 3 App. Ca. 1155, 1201. It is the duty of the court to instruct the jury upon the law, and of the jury to obey the instructions. In the absence of evidence to the contrary, it is presumed that these duties were performed. If in *Bullard* v. *Railroad,* 64 N. H. 27, the plaintiff's counsel, instead of stating to the jury as a fact that the physician had not examined the plaintiff and therefore was not called as a witness, had asked the jury to infer from the fact that he was not called, that he had not examined the plaintiff and therefore could not testify to his condition, he would not have transgressed the line of his duty.

The court properly declined to give the first three instructions requested. If the plaintiff was a trespasser, his misconduct would not relieve the defendants from their obligation to do him no injury that by ordinary care could be avoided. They were responsible for culpable ignorance of his dangerous situation as well as for negligence in any other particular. *Nashua, etc., Co.* v. *Railroad,* 62 N. H. 159, 162–164; *Felch* v. *Railroad,* 66 N. H. 318,

320.   The doctrine of *Clark* v. *Manchester*, 62 N. H. 577, and *Frost* v. *Railroad*, 64 N. H. 220, has no application.   What is there said is to be read in the light of the facts under consideration.   There is a broad difference between the case of a trespasser meeting with an injury by reason of the dangerous condition of the defendants' premises, and that of an injury caused by the defendants' active intervention.

Instructions quite as favorable to the defendants as those last requested were given to the jury.   They were correctly told that if the defendants exercised ordinary care to prevent the injury, the plaintiff though not a trespasser could not recover.   There was no error in the instructions given.

*Judgment on the verdict.*

CHASE, J., did not sit; SMITH, CLARK, and WALLACE, JJ., concurred; DOE, C. J., and BLODGETT, J., were of opinion that the charge of the presiding justice as reported in the reserved case probably gave the jury to understand that the defendants' duty towards the plaintiff was the same whether he was or was not a trespasser upon their tracks at the time of his injury, and upon this ground wholly they dissented.