UNITED STATES, Appellant

v.

Jason W. COOK, Senior Airman
U.S. Air Force, Appellee.

No. 96–5003.
Crim.App. No. S29010.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 6, 1996.

Decided Feb. 20, 1997.

For Appellee: *Colonel Jay L. Cohen* (argued); *Lieutenant Colonel Kim L. Sheffield.*

For Appellant: *Lieutenant Colonel Michael J. Breslin* (argued); *Colonel Jeffery T. Infelise* and *Major John H. Kongable* (on brief); *Colonel Theodore J. Fink.*

*Opinion of the Court*

EFFRON, Judge:

Pursuant to his pleas, appellee was found guilty by a military judge sitting as a special court-martial at Langley Air Force Base, Virginia, of wrongfully using and wrongfully distributing marijuana in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement for 4 months, and reduction to E–1. The convening authori-

ty approved only so much of the sentence as provided for a bad-conduct discharge, confinement for 86 days, and reduction to E–1.* The Court of Criminal Appeals affirmed the findings, set aside the bad-conduct discharge, and affirmed the confinement for 86 days and reduction to E–1. 43 MJ 829, 831.

On April 5, 1996, the Judge Advocate General of the Air Force filed a certificate for review of the decision of the Court of Criminal Appeals on the following issue:

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY GRANTING APPELLATE RELIEF IN THE FORM OF SENTENCE REDUCTION IN RESPONSE TO AN ERROR THAT OCCURRED DURING THE CONVENING AUTHORITY'S DISCRETIONARY REVIEW OF THE CASE.

We answer the certified question in the negative and hold that the Court of Criminal Appeals did not abuse its discretion in this case.

## I. BACKGROUND

In his initial brief to the Court of Criminal Appeals, appellee noted that the record contained no indication that the convening authority had considered appellee's post-trial clemency submission as required by Article 60(c)(2), UCMJ, 10 USC § 860(c)(2) (1983). In the course of appellate litigation there, the parties brought to the court's attention three pertinent documents that had not been included in the record.

The first was a memorandum from the staff judge advocate (SJA) to the convening authority that summarized appellee's clemency submission and set forth the SJA's opinion that a "BCD will deprive [appellee] of some veteran's benefits, but the disruption to his everyday life will be minimal."

The second was a handwritten note from the convening authority to the SJA asking the following three questions: "If I set aside the BCD can his squadron commander impose an OTHC [other than honorable conditions discharge]?"; "If yes what's the difference?"; and "VA benefits? Yes or no."

The third document was another memorandum in which the SJA responded to the questions raised by the convening authority, noting that the squadron commander could initiate an administrative discharge proceeding and recommend an under-other-than-honorable-conditions discharge. After noting that such a procedure would require an administrative hearing unless waived by appellee, the SJA commented: "I doubt he would." The SJA also summarized the effects of a BCD on veteran's benefits, concluding that "most benefits will be denied him...." Finally, the SJA added, "The military judge who adjudged the sentence is the senior military judge in our circuit, one of the most experienced trial judges in the USAF, and considered most of the clemency matters now before you."

Two of the documents provided post-trial recommendations from the SJA to the convening authority, and neither was served on appellee. Appellee contended before the Court of Criminal Appeals that these documents contained "new matter" that should have been served on him for comment as required by RCM 1106(f)(7), Manual for Courts–Martial, United States (1995 ed.).

The Government conceded the error in the post-trial review process and urged the court to return the record to the convening authority for a new post-trial recommendation and action. The Court of Criminal Appeals accepted the concession but granted "a greater remedy" by reassessing the sentence and disapproving the bad-conduct discharge. 43 MJ at 830–31.

## II. DISCUSSION

### A. The Remedial Authority of the Courts of Criminal Appeals

■ In support of the certified issue, appellate government counsel contend that an appellate court has only two options to redress errors in post-trial proceedings before the convening authority: (1) determine that a new review and action would not result in any action more favorable to an accused and affirm; or (2) send the record back to the

---

* Appellee's pretrial agreement limited confinement to 90 days.

convening authority for a new review and action if the error is not harmless. According to appellate government counsel, an appellate court may not fashion other corrective relief in the face of post-trial errors, such as sentence reduction, without undermining the role of the convening authority under Article 60(c).

■ We reject the Government's invitation to unnecessarily limit the scope of appellate authority under Article 66(c), UCMJ, 10 USC § 866(c) (1994), which provides that Courts of Criminal Appeals "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." This congressional grant of authority is more than adequate to vest remedial authority in the Courts of Criminal Appeals to order sentence reduction. *See generally United States v. Parker*, 36 MJ 269, 271 (CMA 1993).

The breadth of such remedial appellate authority is a well-established feature of military law. In *United States v. Griffin*, 8 USCMA 206, 24 CMR 16 (1957), this Court upheld a sentence reduction ordered by the Board of Review (the earlier designation of today's Court of Criminal Appeals), noting that an appellate court has a variety of options when addressing the issue of how to cure errors in post-trial proceedings before the convening authority. We said:

> The answer depends upon the facts in the particular case. Sometimes error can best be cured by returning the case to the level of proceedings at which the error occurred; in other instances, the reviewing authority, **by the exercise of its own powers**, can effectively eliminate the harmful consequences of the error in earlier proceedings.... The critical inquiry is whether justice to the accused requires redetermination of the sentence by the "primary" authority.
>
> * * *
>
> [T]he reviewing authority must consider whether "a new start as it were—is important to an equitable and fair administration of justice." But that principle cannot be applied with slide rule exactitude. There is, and necessarily must be, an area of discretion in a matter of this kind.

*Id.* at 207, 24 CMR at 17 (citations omitted; emphasis added). Neither law nor argument persuades us to depart from this sound precedent, which has been reflected in the long-standing practice of the Courts of Criminal Appeals to order sentence reduction in appropriate cases. *See, e.g., United States v. Thompson*, 43 MJ 703, 708 (A.F.Ct.Crim. App.1995); *United States v. London*, 9 MJ 905, 908 (AFCMR 1980); *United States v. Hayes*, 48 CMR 67, 70 (AFCMR 1973); *United States v. Mullaney*, 44 CMR 534, 535 (ACMR 1971); *United States v. Taylor*, 25 CMR 720, 724 (NBR 1957).

■ We therefore reject the Government's premise that the Court of Criminal Appeals exceeded its authority by granting sentence relief rather than remanding this case to the convening authority for a new recommendation and action. In so doing, we emphasize that our opinion should not be viewed as detracting in any way from the responsibility of the convening authority to act on the findings and the sentence under Article 60. The convening authority has the primary responsibility for the administration of military justice within his or her command. We routinely have recognized the convening authority as the accused's best hope for clemency. *See United States v. Dresen*, 40 MJ 462, 465 (CMA 1994); *United States v. MacCulloch*, 40 MJ 236, 239 (CMA 1994).

The powers of the convening authority under Article 60(c), however, long have existed in harmony with the review and remedial roles of the Courts of Criminal Appeals under Article 66(c). The experienced and mature judges of the Courts of Criminal Appeals are fully capable in a given case of determining whether an error is harmless, whether corrective action should be taken by the Court of Criminal Appeals, or whether the case should be returned to the convening authority for new action. If there is an allegation that a Court of Criminal Appeals has abused its discretion in either granting or denying remedial action, a petition or

certificate for review may be submitted for our consideration.

### B. Exercise of Discretion by the Air Force Court of Criminal Appeals

■ Having affirmed the authority of the Courts of Criminal Appeals to fashion appropriate relief, including sentence reduction, in the face of post-trial errors, we also find that the court below did not abuse its discretion in the instant case. The court properly ensured not only that the sentence was correct but also that, on the basis of this record, it "should be approved." Art. 66(c).

The Court of Criminal Appeals found the error herein to be prejudicial to appellee. This finding of prejudice is supported by the record. The new matter that was presented to the convening authority without being served on appellee or counsel: (1) extolled the experience of the military judge in an effort to show that further clemency was not warranted; (2) speculated that appellee would not waive an administrative discharge board despite his request that the convening authority disapprove the bad-conduct discharge; and (3) sought to diminish the severe impact of a bad-conduct discharge on appellee's future. Essentially, the SJA used this extra-record matter to persuade the convening authority to approve the bad-conduct discharge.

In considering an appropriate remedy, the Court of Criminal Appeals found that the convening authority in this case was "at least open to granting clemency on the punitive discharge in a drug case—not an everyday occurrence" and that "the SJA may well have prejudiced **this [appellee's]** 'best hope for sentence relief' from his BCD." 43 MJ at 831, quoting *United States v. Bono*, 26 MJ 240, 243 n. 3 (CMA 1988)(emphasis added). It was not an abuse of discretion for the Court of Criminal Appeals to consider such factors in determining that corrective action should be taken by the appellate court rather than

through returning this case for further review and action, particularly in light of the possibility that the case might be submitted to a different convening authority for action.

The Government also claims that the Court of Criminal Appeals fashioned its relief to punish the SJA and to deter others who might make the same error because of the court's concern about the volume of cases involving errors in post-trial processing. The Government's argument ignores those portions of the opinion, which we previously have discussed, in which the court described the specific circumstances in this case that justified sentence reduction.

We note that the Court of Criminal Appeals expressed its apparent dissatisfaction with the number and repetitive nature of post-trial processing errors in other cases. 43 MJ at 831. We find nothing inappropriate, however, in that court's consideration of the vital supervisory role it plays in the administration of military justice in fashioning a remedy in this case.

### III. CONCLUSION

We find that the Court of Criminal Appeals properly exercised its discretion to fashion an appropriate remedy by affirming only that portion of the sentence that it found correct under the guidelines of Article 66(c). Additionally, it was not unreasonable for that court to express its well-founded concern for the quality of post-trial processing in the Air Force.

The certified question is answered in the negative.

The decision of the United States Air Force Court of Criminal Appeals setting aside the bad-conduct discharge is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and GIERKE concur.