**UNITED STATES, Appellee,**

v.

**Johnnie M. TAYLOR, Sergeant,
U.S. Air Force, Appellant.**

No. 96–1241.
Crim.App. No. 31574.

U.S. Court of Appeals for
the Armed Forces.

Argued June 5, 1997.

Decided Sept. 30, 1997.

Sullivan and Crawford, JJ., filed dissenting opinions.

For Appellant: *Major Ray T. Blank, Jr.* (argued); *Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, Captain Michael L. McIntyre,* and *Captain Tishlyn Taylor* (on brief).

For Appellee: *Captain Libby A. Brown* (argued); *Colonel Theodore J. Fink* and

*Lieutenant Colonel Michael J. Breslin* (on brief).

## Opinion of the Court

GIERKE, Judge:

At a general court-martial composed of officers at Holloman Air Force Base, New Mexico, appellant was arraigned on charges of forcible sodomy, assault and battery, indecent assault, and committing indecent acts, in violation of Articles 125, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 925, 928, and 934, respectively. Appellant pleaded guilty to consensual sodomy but not guilty to forcible sodomy, and not guilty to the remaining offenses. The military judge dismissed the assault-and-battery and indecent-assault charges as multiplicious. Thereafter, the court-martial found appellant guilty of forcible sodomy and committing indecent acts, and sentenced him to a dishonorable discharge, confinement for one year, total forfeitures, and reduction to the lowest enlisted grade.

Our Court granted review of the following issue:

WHETHER, GIVEN THE FACT THAT THE STAFF JUDGE ADVOCATE IMPROPERLY ADVISED THE CONVENING AUTHORITY AS TO THE APPROPRIATE LEGAL STANDARD TO APPLY IN REASSESSING THE SENTENCE IN LIGHT OF THE CONVENING AUTHORITY'S DISMISSAL OF CHARGE II, CHARGE III, AND THE GREATER OFFENSE OF CHARGE I, THE REMEDY PROVIDED BY THE AIR FORCE COURT OF CRIMINAL APPEALS WAS INAPPROPRIATE, AS APPELLANT'S SENTENCE CANNOT BE RELIABLY REASSESSED.

The granted issue arose as a result of efforts by the convening authority and the Court of Criminal Appeals to cure a perceived trial error.

## Factual Background

This case was a one-on-one credibility contest, with the victim testifying that she was forced to commit sodomy, and appellant testifying that she did so willingly. During the defense cross-examination of the victim, defense counsel asked her several times if she had made statements to criminal investigators that were inconsistent with her trial testimony. In each instance she responded that she did not know or did not remember.

In his argument on findings, trial counsel argued as follows:

Now the defense in this case questioned her on, well, didn't you tell the OSI [Office of Special Investigations] this, didn't you tell the OSI that, didn't you tell the OSI this, and she said, I don't remember, I don't know, I don't remember. Well, their words, their questions aren't testimony. Where's the witness? If she was so vitally contradicted don't you think that these people who brought [a friend of the victim who contradicted her] before you would have brought an OSI agent in here—

At this point defense counsel objected. The military judge overruled the objection, and trial counsel continued:

Don't you think, ladies and gentlemen, that if there was a witness out here, having brought these other witnesses, they would have brought this OSI agent here to say that's not what [the victim] told me, she made up a different story. But there is no evidence of this on this record. No evidence.

After trial, defense counsel submitted a brief to the convening authority pursuant to Article 38(c), UCMJ, 10 USC § 838(c), asserting that trial counsel's argument on findings was improper. The staff judge advocate (SJA) in his Addendum agreed and pointed out that "the only question left for determination by the members was whether the act was voluntary or by force[,]" and that "[t]he case basically came down to the testimony of the accused versus the testimony of the victim." Concluding that the military judge's erroneous failure to sustain the defense objection to trial counsel's improper argument "goes to the heart of the evidence affecting each of the contested specifications," the SJA recommended that all contested findings be set aside and that the findings be sustained only as to the offense to which appellant

pleaded guilty. Finally, the SJA recommended that the convening authority reassess the sentence by reducing the dishonorable discharge to a bad-conduct discharge and by reducing the confinement from 1 year to 8 months.

The convening authority accepted the SJA's recommendation completely. He disapproved the conviction of forcible sodomy and approved only the lesser offense of consensual sodomy to which appellant had pleaded guilty; disapproved the conviction of committing indecent acts; and reduced the sentence as recommended by the SJA.

The Court of Criminal Appeals held that the SJA's advice to the convening authority was correct "as far as it went, but was incomplete" because he failed to tell the convening authority that, "in reassessing the punishment, he must place the appellant in, at the very least, the position he would have occupied had no error occurred." The court then reassessed the sentence but granted no relief, reasoning that "appellant would not have been assessed a lesser punishment on rehearing than that [sic] the sentence which was approved by the convening authority." The court concluded that "appellant has been placed in the position he would have occupied if no error had occurred." Unpub. op. at 3.

Appellant now argues before our Court that a sentence rehearing should be ordered because there is no reliable way to determine the effect of the trial error on the sentencing authority. The Government argues that the court below did not abuse its discretion in reassessing the sentence and that the evidence of force could be considered in reassessing the sentence even though appellant stands convicted only of consensual sodomy.

### Discussion

Trial counsel suggested that, because the defense failed to present the testimony of the OSI agent who interviewed the victim, the court members could and should infer that the OSI agent's testimony would have been adverse to the defense. *See Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893) ("[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced would be unfavorable.").

This Court generally has not permitted a trial counsel to comment on the failure of the defense to produce evidence. *See United States v. Mobley,* 31 MJ 273, 279 (1990); *United States v. Swoape,* 21 MJ 414, 417 (1986). Some civilian federal courts give the trial judge discretion to permit a prosecutor to argue the "missing-witness" inference against the defense, but the inference generally is permissible only if the missing witness is "favorably disposed" to the defense, is "peculiarly available" to the defense, or if the defense has "exclusive control" over the witness. *See United States v. St. Michael's Credit Union,* 880 F.2d 579, 597 (1st Cir. 1989); *see also Pennewell v. United States,* 353 F.2d 870, 871 (D.C.Cir.1965). The missing-witness inference usually may not be drawn if the witness is "equally within the power of either party to produce." *United States v. Pitts,* 918 F.2d 197, 199 (D.C.Cir. 1990). Although the record is not fully developed on this issue, it appears that the OSI agent was equally available to both sides, not "favorably disposed" to the defense, and not "peculiarly available" to the defense.

We need not decide, however, whether trial counsel was entitled to argue the "missing-witness rule." The Government has not disputed the SJA's conclusion that trial counsel's argument was improper, either in the court below or before this Court. Accordingly, the SJA's conclusion that the argument was improper is the law of the case. *United States v. Grooters,* 39 MJ 269, 273 (CMA 1994); *United States v. Sales,* 22 MJ 305, 307 (CMA 1986). The only issue before us is whether the court below erred by reassessing and affirming appellant's approved sentence.

■ When prejudicial error occurs at trial, the Court of Criminal Appeals may reassess the sentence instead of ordering a sentencing rehearing if the court is convinced that appellant's sentence "would have been at least of a certain magnitude." *Sales,* 22 MJ at 307. An appellant "is entitled to be made

whole on appeal." *United States v. Reed,* 33 MJ 98, 99 (CMA 1991). A sentence rehearing must be ordered if the Court of Criminal Appeals "cannot reliably determine what sentence would have been imposed at the trial level if the error had not occurred." *United States v. Sales, supra.*

In *United States v. Jones,* 39 MJ 315, 317 (1994), we set out the following standard of review in sentence-reassessment cases: "We will only disturb the Court of [Criminal Appeals'] reassessment in order to 'prevent obvious miscarriages of justice or abuses of discretion.' "

▮▮ When we review a decision of the Court of Criminal Appeals for abuse of discretion, we use the same standard as we use in reviewing a decision of a military judge. We will overturn the lower court on a question of fact only if the lower court's finding is clearly erroneous or unsupported by the record. We review questions of law *de novo.* The lower court is deemed to have abused its discretion if its decision is based on "an erroneous view of the law." *See United States v. Sullivan,* 42 MJ 360, 363 (1995).

▮▮ Applying the foregoing principles, we come to two conclusions. First, the Court of Criminal Appeals appears to have based its sentence reassessment on an erroneous view of the law when it determined that "appellant would not have been assessed a lesser punishment on rehearing." Unpub. op. at 3. The standard for reassessment is not what would be imposed at a rehearing but what would have been imposed at the original trial absent the error. *See Jones,* 39 MJ at 317; *United States v. Poole,* 26 MJ 272, 274–75 (CMA 1988); *Sales,* 22 MJ at 308; *United States v. Suzuki,* 20 MJ 248, 249 (CMA 1985).

▮▮ Second, we reject the Government's argument that the evidence of force may be considered in reassessing the sentence. The Government correctly argues that the consequences of an offense or its surrounding circumstances may be considered in sentencing. *See, e.g., United States v. Scott,* 42 MJ 457 (1995) (death and injuries resulting from carrying concealed weapon); *United States v. Glazier,* 26 MJ 268 (CMA 1988) (fatal accident resulting from wrongful appropriation of vehicle). The Government's argument would have merit if a rehearing had been ordered. The flaw in the Government's argument, however, is that the court below chose to purge the error by sentence reassessment instead of ordering a rehearing. While the victim's testimony that appellant forced her to commit sodomy might well be admissible at a rehearing, it may not be considered if, in lieu of a rehearing, the error—which relates to the victim's credibility—is to be purged by sentence reassessment. The impact of trial counsel's improper argument can be purged only by resolving the credibility issue in appellant's favor and viewing the case as though the sentencing authority had not believed the victim's testimony that she was forced to perform sodomy on appellant.

The SJA and convening authority agreed that trial counsel's argument on findings was improper and dismissed all contested offenses, thereby putting appellant in the position where he would have been if the court members had disbelieved the victim. With respect to sentence, however, a significant aggravating circumstance, *i.e.,* the forcible nature of the act, was also completely dependent on the credibility of the victim's testimony. The issue of force carried over from findings to sentence, with trial counsel focusing on the element of force. He argued, "This was an act of force; it was an act of violence. . . . It was one that involved an outright attack on" the victim. If the victim had been disbelieved, the sentence would have been determined on the premise that there was no force involved. In order to put appellant in the position where he would have been with respect to sentence absent the error, the issue of the victim's credibility must be resolved in appellant's favor, and the victim's testimony regarding use of force must be disregarded. Thus, reassessment must be based solely on an act of consensual sodomy.

Because the court below appears to have incorrectly reassessed on the basis of the likely sentence at a rehearing, we cannot determine whether that court improperly

considered the victim's testimony among the circumstances affecting sentence. A remand is necessary to ensure that the court below has reassessed the sentence under the correct legal standard or has determined that a rehearing is required because the sentence cannot be reliably reassessed.

The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for submission to the Court of Criminal Appeals for further review. If the Court of Criminal Appeals determines that it cannot reliably reassess the sentence as though the credibility issue had been resolved in appellant's favor, a sentence rehearing may be ordered.

Chief Judge COX and Judge EFFRON concur.

SULLIVAN, Judge (dissenting):

The fact that there were some wrong directions given the convening authority who was traveling on basically the right path should not necessarily send this case back down the road it has already traveled. It is clear that there was error in the recommendation of the staff judge advocate to the convening authority in this case. *See United States v. Reed,* 33 MJ 98 (CMA 1991). However, in light of the reduction of sentence from a dishonorable discharge to a bad-conduct discharge and 12 months' confinement to 8 months' confinement, I see no prejudice. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a). That is the law I would apply, and I would affirm on this basis.

Moreover, it is not just the law but the way the majority describes the facts that causes this dissent. Each case is unique to itself. Each case presents a cry for justice. But the full case must be told if justice is to be done and, sometimes more importantly, is seen to be done.

On this factual note, the majority's sterile dismissal of this case as "a one-on-one credibility contest," 47 MJ at 323, belittles the crime in this case and must be more fully answered. This case was charged as a sexual-assault case between a married Air Force sergeant and a 17-year-old female. Before this case is reversed, the opposite side should be disclosed. The Government's brief before us summarizes the Government's view of the evidence and its argument to affirm this case, as follows:

The evidence in this case reveals appellant met the victim, AMD, when he offered her a ride to a friend's house. (R. at 241.) During the ride, appellant asked the 17-year-old victim if he could see her again. (R. at 241.) Subsequently, appellant picked up AMD at her home and they went to lunch. (R. at 242.) Appellant made no sexual advances on this date. (R. at 243.) AMD saw appellant every day of the week before the incident which was the subject of the court-martial. (R. at 244.) During that time, appellant had tried to kiss AMD twice. (R. at 245.) AMD pushed him away both times and told appellant she just wanted to be friends. (R. at 245.)

On 24 January 1994, appellant and AMD went to Oliver State Park to have a picnic. (R. at 247.) There was no discussion about sex and AMD testified that the purpose of going to the park was not to have sex. (R. at 247.) Once they arrived at the park, they walked on a steep trail for about two miles and AMD suggested they stop for lunch. (R. at 249.) However, appellant wanted to walk further up the trail. (R. at 249.) Finally, the couple stopped and laid a blanket on the ground and had lunch. (R. at 251.) After lunch, appellant kissed AMD and she pushed him away. (R. at 251.) However, appellant persisted. (R. at 252.) AMD told appellant she did not want a physical relationship with him and he responded that "we had to work out some kind of compromise." (R. at 252.) When AMD told appellant that she did not want to have sexual intercourse with him, he became upset. (R. at 255.) Appellant suggested oral sex, but AMD refused. (R. at 255.) AMD walked down the trail to get away from appellant, but appellant grabbed her arms. (R. at 257.) AMD tried to leave again, but appellant grabbed her by her jacket collar and pushed her on the ground (R. at 258.) AMD testified,

"After he pushed me down he said that I was either going to suck his thing or do something. Those were his words." (R. at 258.) Appellant then unzipped his pants, pulled out his penis and sat on top of AMD. (R. at 258–59.) AMD tried to move but was unable to do so. (R. at 259.) AMD screamed and appellant covered her mouth and told her to shut up. (R. at 259.) Appellant also told AMD that "it was just as easy to rip [her] clothes off." (R. at 262.) AMD was afraid appellant was going to rape or kill her. (R. at 262.) Appellant kept trying to put his penis in AMD's mouth. (R. at 259.) Appellant finally succeeded and ejaculated in AMD's mouth. (R. at 260.)

Appellant argues that the Air Force court could not reliably reassess the sentence "when all of the major charges against an accused are dismissed." (App. Br. at 5.) As noted above, Charge II and Specification 1 of Charge III were dismissed by the military judge at trial as multiplicious. (R. at 448.) Thus, these charges were not before the court at sentencing. More importantly, the military judge instructed the members that the forcible sodomy and the indecent acts were one offense for the purpose of sentencing. (R. at 539.) This Court has recognized that, where "the findings were not set aside as to charges that had been treated at trial as multiplicious with the remaining charges for sentencing purposes, ... the risk was minimal that a higher sentence had been adjudged ..." because of legal error. *Sales,* 22 MJ at 308 (citing *United States v. Zubko,* 18 MJ 378 (CMA 1984)). In this case, since the indecent acts in Charge III were considered to be multiplicious for sentencing with the forcible sodomy, the subsequent dismissal of the indecent acts charge would have no effect on the determination of the sentence. The only significant change in the charges was in reducing the forcible sodomy offense to sodomy.

It was entirely appropriate for the Air Force court to consider all the facts and circumstances surrounding the incident even though some of the charges had been dismissed. The charge of sodomy does not require proof of consent; a conviction for sodomy vice forcible sodomy does not require a finding that the victim consented, only that the aggravating factor of force was not proved beyond a reasonable doubt. Evidence of force was clearly admissible as evidence in aggravation and provided the Air Force court with a reasonable basis upon which to determine appellant deserved no further relief than that given by the convening authority. Furthermore, based upon the evidence, appellant's sentence was appropriate. Even though appellant stands convicted of only consensual sodomy, his actions in luring a young girl to a secluded area of a park and having her engage in sodomy, under the particular circumstances of this case, is reprehensible conduct.

Answer to Final Brief at 7–9.

CRAWFORD, Judge (dissenting):

The underlying issue in this case revolves around the credibility of the victim and appellant. Specifically, it centers on the defense's cross-examination of the victim.

IDC: Angela, did you tell the OSI that you and Sergeant Taylor never kissed before the 24th?

WIT: (The witness shook her head in a negative response.)

Q: I'm sorry, could you—

A: I don't remember.

Q: Did you tell the OSI that you and Sergeant Taylor did not have any kind of physical contact before the 24th?

A: No.

* * *

IDC: Angela, I'm going to offer you, and I'll have this later marked as Defense Exhibit for Identification "D". And I'll ask you to read the last sentence where it starts on "victim stated." And tell me when you're done.

(The witness read the statement.)

Have you finished reading that sentence?

WIT: Yes.

Q: Angela, do you recall telling the OSI that?

A: No, I don't remember.

* * *

IDC: Did you tell the OSI that you did not know before the 24th of January that Sergeant Taylor was married because it was Officer Ledbetter who told you that he was married?

WIT: I remember I told them I didn't—that he didn't tell me that he was married, but I don't remember the other part.

* * *

IDC: I'm retrieving the document from Angela. Does this in fact refresh your memory as to what you told the OSI?

WIT: I remember—I don't remember what I said to the OSI, that was over 9 months ago.

* * *

IDC: Did you in fact tell the OSI that Sergeant Taylor had never kissed you before the 24th?

WIT: I don't remember what I told the OSI.

Based on the above, the prosecutor argued:

Now the defense in this case questioned her on, well, didn't you tell the OSI this, didn't you tell the OSI that, didn't you tell the OSI this, and she said, I don't remember, I don't know, I don't remember. Well, their words, their questions aren't testimony. Where's the witness? If she was so vitally contradicted don't you think that these people who brought [a friend of the victim who contradicted her] before you would have brought an OSI agent in here—

After defense counsel's objection was overruled, the prosecutor continued:

Don't you think, ladies and gentlemen, that if there was a witness out here, having brought these other witnesses, they would have brought this OSI agent here to say that's not what [the victim] told me, she made up a different story. But there is no evidence of this on this record. No evidence.

During post-trial proceedings, the defense in a brief to the convening authority contended that this argument was improper. The Staff Judge Advocate (SJA) agreed and so advised the convening authority. The convening authority then reduced the findings and sentence in the case in accordance with the recommendation of the SJA.

## DISCUSSION

When the factfinders can draw reasonable inferences from the evidence, these inferences may be considered during deliberations and argued by the parties provided there is no violation of the Constitution, a Military Rule of Evidence, or Procedural Rule. The cases cited by the majority do not hold otherwise. The majority, relying upon the "law-of-the-case" doctrine [1] states, "We need not decide, however, whether trial counsel was entitled to argue the 'missing-witness rule.' The Government has not disputed the SJA's conclusion that trial counsel's argument was improper, either in the court below or before this Court." 47 MJ 322, 324.

In effect the SJA's action in this case is a concession. It is understandable why the SJA conceded error. This is a complex area that has bedeviled the courts. But this Court is not bound by government concessions. *See United States v. Emmons*, 31 MJ 108, 110 (CMA 1990); *United States v. Hand*, 11 MJ 321 (CMA 1981); *United States v. Wille*, 9 USCMA 623, 627, 26 CMR 403, 407 (1958).

Many times the temptation toward an easy answer or an attempt to avoid an appellate issue creates new issues.[2] As the highest

1. For a discussion of the "law-of-the-case" doctrine, see *United States v. Williams*, 41 MJ 134, 135 n. 2 (CMA 1994)(majority rejecting law of the case); *United States v. Grooters*, 39 MJ 269, 274–75 (CMA 1994)(Crawford, J., concurring in the result).

2. *See, e.g., United States v. English*, 47 MJ 215 (1997)(judge moves beyond question of entitle-

court of review prior to direct review by the Supreme Court, this Court should ensure that reported decisions which enunciate an improper rule of law, such as the lower court's opinion in this case,[3] are corrected.[4]

In facing a similar issue Judge Learned Hand stated:

> When both sides fail to call a witness who knows something of the facts, their conduct, like anything else they do, is a circumstance which a jury may use. If both can call him and he is impartial, ordinarily it will have little weight; if it appear that he would naturally side with one party, it is reasonable to expect that he does not use him for good reason; and that is fair argument for the other. More so, if he is only available to one who alone knows the facts, and there is no other evidence on the issue. Perhaps, as Professor Wigmore puts it (section 288), an inference is, strictly speaking, always proper against each side, but of different weight. *Mitchell v. Boston & M.R.R.*, 68 N.H. 96, 116, 34 A. 674. A judge is not required to intervene here any more than in any other issue of fact. He must indeed, as he always must, keep the prosecution in a criminal case within bounds; he must not allow it by implication to invoke unsound legal doctrines (*Graves v. U.S.*, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021); just as he must keep passion out of the debate and hold the parties to the issues.[5]

Or as stated in *McCormick on Evidence:*

> A web of rules also can develop by tightly controlling counsel's argument on the inference. It is wiser to hold that if an argument on failure to produce proof is fallacious, the remedy is the answering argument and the jury's good sense. Thus, the judge should be required to intervene only when the argument, under the general standard, can be said to be not merely weak or unfounded, but unfair and prejudicial.[6]

The law in this area is complex, and it does not appear that the SJA took the time to research this issue. Had he done so, he would have reached the conclusion, as did Judge Learned Hand and the editors of *McCormick*, that there was no underlying error. Any relief obtained was thus a windfall. Appellant is not entitled to any additional relief on the issue before this Court.

---

ment to RCM 706 board to determine whether there was an adequate substitute); *United States v. Britton*, 47 MJ 195 (1997); *United States v. Boyle*, 36 MJ 326, 328 (CMA 1993)(Crawford, J., concurring in the result).

**3.** 1996 WL 354883 (June 20, 1996).

**4.** *See also United States v. Garcia*, 44 MJ 27, 28 n. 3 (1996)(declining to answer specified issue of whether Court could review underlying issue not raised on appeal).

**5.** *United States v. Cotter*, 60 F.2d 689, 692 (2d Cir.1932).

**6.** *McCormick on Evidence* § 264 at 189 (4th ed.1992) (footnotes omitted).