UNITED STATES, Appellee,

v.

Roger D. EVERSOLE, Sergeant
First Class, United States
Army, Appellant.

No. 98–0999.
Crim.App. No. 9600466.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 26, 1999.

Decided June 29, 2000.

COX, S.J., delivered the opinion of the Court, in which SULLIVAN and EFFRON, JJ., joined. SULLIVAN, J., filed a concurring opinion. CRAWFORD, C.J., and GIERKE, J., each filed a dissenting opinion.

For Appellant: *David P. Sheldon* (argued); *Captain Patricia A. Lewis* (on brief).

For Appellee: *Captain Mary E. Braisted* (argued); *Colonel Russell S. Estey* and *Lieutenant Colonel Eugene R. Milhizer* (on brief).

Senior Judge COX delivered the opinion of the Court.

Appellant was a sergeant first class (E–7) on the brink of retirement eligibility at the time of his court-martial. He was charged with sodomy, aggravated assault, bigamy,

adultery, and obstruction of justice.[1] Despite the apparent seriousness of the Charges, the convening authority referred them to a special court-martial. Appellant pleaded not guilty to all Charges and specifications, but a military judge sitting alone convicted him of aggravated assault, bigamy, adultery, and obstruction of justice. The judge sentenced appellant to reduction to E–1, confinement for 6 months, and a bad-conduct discharge (which, except for forfeitures, is essentially the jurisdictional limit of the court-martial, *see* Art. 19, Uniform Code of Military Justice, 10 USC § 819). The convening authority approved the sentence.

In an unpublished opinion dated June 12, 1998, the Court of Criminal Appeals, utilizing its authority to reweigh evidence under Article 66(c), UCMJ, 10 USC § 866(c), found the evidence of aggravated assault insufficient, and it dismissed that Charge and its specification. However, the court affirmed the findings of guilty of bigamy, adultery, and obstructing justice. Reassessing sentence, the court set aside 3 months of appellant's already-served confinement, but it approved the remaining sentence. The granted issue concerns the appropriateness of the Court of Criminal Appeals' action in reassessing sentence, as opposed to remanding for a rehearing on sentence. 51 MJ 358 (1999).

■ The legal principles applicable to this situation have been thoroughly developed. *See United States v. Boone,* 49 MJ 187, 194–96 (1998); *cf. United States v. Hawes,* 51 MJ 258, 260 (1999). There is no question but that the Court of Criminal Appeals has the jurisdiction, authority, and expertise to reassess court-martial sentences, even after dismissing charges. *Jackson v. Taylor,* 353 U.S. 569, 576–80, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957)(approving the then-Board of Review's reassessment of sentence from life to 20–years' confinement, after Board set aside

a murder charge but affirmed an attempted rape charge). The operative language of Article 66(c) conferring the power on the Courts of Criminal Appeals to "affirm only such ... sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved," has not changed a bit since *Jackson v. Taylor,* or indeed since the inception of the Uniform Code.

■ When a Court of Criminal Appeals reassesses a sentence due to some error in the proceedings (including an erroneous conviction), the stock formula is for it to affirm, if it feels that it can, only so much of the sentence as "would have been imposed at the original trial absent the error." *United States v. Taylor,* 47 MJ 322, 325 (1997). Otherwise, the court must order a rehearing on sentence. *United States v. Jones,* 39 MJ 315, 317 (CMA 1994). We, in turn, are obliged not to "disturb" the intermediate court's reassessment, except to "prevent obvious miscarriages of justice or abuses of discretion." *Id.,* quoting *United States v. Dukes,* 5 MJ 71, 73 (CMA 1978). Alchemistic formulae aside, the intermediate court's ability to *know* what magnitude of sentence the trial court would have imposed, absent the error, continues to bedevil the appellate process.

■ The instant facts are illustrative. Appellant made a colossal mess of his domestic life, and it began to interfere with his military career. Then he compounded his problems with an ever-enlarging web of deceit and deception. (*See* extract from unpublished opinion of Court of Criminal Appeals, appended hereto.) Not least of the allegations was the supposed aggravated assault on his ex-wife, which Charge the Court of Criminal Appeals subsequently dismissed.[2] Un-

---

1. Violations of Articles 125, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 925, 928, and 934.

2. As a collateral consequence of dismissing the aggravated assault Charge and specification, the Court of Criminal Appeals was not obliged to deal with appellant's petition for new trial based upon an affidavit purportedly made by a close

friend of the prosecutrix, the former Mrs. Eversole. Therein, affiant avers that the former Mrs. Eversole admitted to her that she had lied to military investigators about appellant assaulting her, and she asked affiant to perjure herself at appellant's court-marital, which affiant refused to do. Affiant avers that she kept quiet about these matters and did not come forward to re-

der ordinary circumstances, we might have felt quite confident that the Court of Criminal Appeals had made a good approximation of a sentence the trial court would have imposed. The court did, after all, halve appellant's adjudged sentence to confinement (6 months to 3).

These were not ordinary circumstances, however. Bigamy, sodomy, adultery, and obstruction of justice, in combination, generally are not viewed as insignificant offenses. Yet, as indicated, the Charges were referred to a special court-martial. Plainly, already impacting the thinking at the referral stage was the fact of appellant's status as a noncommissioned officer with 19–plus years of creditable service. That is to say, under consideration was the fact that a punitive discharge alone would have the effect of depriving appellant of a cumulatively huge sum of pension money, a sum that rendered typical confinement and forfeitures for such offenses insignificant.

Moreover, over three years later, when the dust settled at the Court of Criminal Appeals, the overriding question remained whether to terminate appellant's imminent pension by approving the bad-conduct discharge. With all due respect to the good faith and intentions of the Court of Criminal Appeals, we are at a loss to know how any appellate authority could know, with any degree of certainty, what a trial court would have done regarding the punitive discharge under these circumstances. Solomon, at least, could offer to split the baby. A punitive discharge cannot be split. It is all or nothing; there is no middle ground. Indeed, it is possible that the Court of Criminal Appeals found itself in a no-win situation: Affirm the discharge and arguably impact appellant in a manner all out of proportion to his offenses; or, being unable to affirm an appropriate punishment, set aside the discharge and hand appellant an arguable windfall.

In our judgment, this fairly unique type of dilemma ought to be resolved by a trial court if an accused's fundamental right to trial is to be vindicated. *Cf. United States v. Peoples*, 29 MJ 426, 429 (CMA 1990). At the same time, the Government is protected from suffering an unjust windfall because its right to present a sentencing case to a trial court is preserved. Consider, for example, that a different lower court, on the same facts, might have set aside the punitive discharge, depriving the Government of a trial forum. Accordingly, under these unusual circumstances, we hold that the Court of Criminal Appeals abused its discretion in reassessing appellant's sentence.[3]

The decision of the United States Army Court of Criminal Appeals is affirmed as to findings. The sentence, however, is set aside. The record is returned to the Judge Advocate General of the Army. A rehearing on sentence may be ordered.

## APPENDIX

*United States v. Eversole*, ARMY 9600466, Memorandum Opinion and Action on Petition for New Trial, 12 June 1998, at 3–5:

### Facts

At the time of his court-martial in March 1996, appellant had over nineteen years of service. The charges in this case stem from his efforts to manipulate both an estranged wife and a fiancée while preserving his finances, his home, and his retirement.

In January 1993, appellant married a Korean woman named Pok Sun, in Seoul, Korea. In February 1993, appellant and his new bride, pursuant to orders reassigning him to Fort Leonard Wood, moved into a home he previously owned in Missouri. The marriage quickly deteriorated into one involving physical and verbal confrontation by both parties. In October 1993, appellant moved out of his home and filed for divorce.

---

port them to authorities. Affiant was not a witness at the court-martial.

**3.** The Court of Criminal Appeals' decision to reassess sentence, rather than remand to the trial

court, also had the incidental effect of cutting off the convening authority (who referred these Charges to a special court-martial in the first instance) from reconsidering what punishment to approve minus the aggravated assault conviction.

In November 1993, appellant moved in with Ms. Burruss and her two daughters. On 4 December 1993, civilian authorities arrested appellant for assaulting and hospitalizing Pok Sun. Appellant pleaded guilty to this offense in civilian court. Appellant was also reduced in rank by an administrative reduction board as a result of his civilian conviction. While the record is not clear, it appears that several months later, appellant and Pok Sun subsequently reconciled (although he continued to live with Ms. Burruss); that Pok Sun withdrew her complaint; and that the civilian conviction and military administrative reduction board were withdrawn.

In June 1994, appellant and Ms. Burruss began a sexual relationship even though appellant was still married to Pok Sun. At a 4 November 1994 divorce proceeding, appellant postponed his divorce from Pok Sun so that she could have gall bladder surgery at Army expense and obtain a green card. That same day, appellant went home to Ms. Burruss and told her his divorce was final and that they could get married.

On 30 December 1994, appellant, Ms. Burruss, and her two children drove from Fort Leonard Wood to Arkansas, where appellant and Ms. Burruss were married. In January 1995, Ms. Burruss learned that appellant's divorce from Pok Sun was not final, when court papers arrived in the mail stating that he was separated but not divorced. Nevertheless, appellant and Ms. Burruss continued to live together. Appellant never applied for an identification card or sought military benefits for Ms. Burruss.

Appellant's divorce from Pok Sun was final on 3 May 1995. On 5 May 1995, without telling Ms. Burruss, appellant moved his possessions out of Ms. Burruss's trailer and back into his home. Appellant testified that he then went hunting and fishing for a few days by himself. Pok Sun testified that she went with appellant during this period and that they engaged in sexual intercourse and sodomy. In either event, Pok Sun continued to live in appellant's home until the end of June 1995, even though appellant was awarded sole possession of the home in the divorce decree.

Between 5–8 May 1995, after appellant moved out of her trailer, Ms. Burruss reported their illegal marriage to his company commander. She specifically asked for help in getting the money back that she spent on appellant for numerous items, including a rifle, a tool box for his truck, fishing gear, camping equipment, jewelry, legal expenses, $250.00 to bail him out of jail, and substantial amounts of money to pay his bills when his pay was garnished because of unpaid Deferred Payment Plan debts.

About 8–10 May 1995, appellant discovered that Ms. Burruss had reported him to his commander. He explained to Ms. Burruss the ramifications of her report and quickly reconciled with her. On 19 May 1995, appellant gave military police investigators (MPI) a detailed sworn statement in which he admitted his adulterous relationship with Ms. Burruss but denied that he had married her. His statement described in detail how Ms. Burruss confessed to him that she had faked the marriage by getting another man to forge appellant's signature on the marriage license request and actually pose as appellant during the marriage ceremony. On 24 May 1995, Ms. Burruss gave a detailed sworn statement to MPI corroborating appellant's incredulous story about Ms. Burruss faking their marriage in December 1994. Subsequent handwriting analysis determined that appellant did sign the 30 December 1994 marriage license application. At trial in March 1996, appellant and Ms. Burruss both testified that they did get married on 30 December 1994.

In August 1995, appellant permitted Ms. Burruss and her children to move into his house and live with him but required Ms. Burruss to sign a lease and pay $300.00 per month rent to him. On 19 September 1995, Pok Sun came to appellant's house and got into a physical fight with Ms. Burruss. The fight lasted about fifteen minutes and required police intervention. Both women received minor injuries. Pok Sun claims that during the fight appellant kicked her in the head while Ms. Burruss was sitting on top of

her. This alleged kick is the basis of the aggravated assault conviction. Ms. Burruss and appellant both testified that appellant was not present during the fight. No medical evidence was presented to corroborate a kick to the head. Neighbors gave conflicting testimony concerning whether appellant was present during the fight. The police officer who responded to the scene and found Ms. Burruss still sitting on Pok Sun could not substantiate that appellant was present at the time of the fight.

On 20 September 1995, charges were preferred against appellant for adultery, bigamy, and sodomy.* The aggravated assault charge was preferred on 19 October 1995. Appellant was arraigned on these charges on 8 January 1996, with a tentative trial date set for early February 1996.

Appellant testified that he asked Pok Sun "a couple of times a week" in January 1996 about her upcoming testimony in his court-martial. Appellant then prepared a statement for Pok Sun to sign. This statement retracted Pok Sun's two prior statements to military and civilian police and corroborated appellant's version of the sodomy and assault charges. Appellant testified that on the morning of 24 January 1996, he took this statement to Pok Sun and asked her to sign it. She declined. Appellant then immediately took Pok Sun to Rolla, Missouri, where they signed an application for marriage. Appellant testified that they then returned to Pok Sun's residence, where she did sign the statement prepared by appellant. Appellant testified that he never intended to remarry Pok Sun and that he signed the marriage application only to ensure that Pok Sun testify truthfully at his court-martial. Appellant did not give this statement to his defense counsel until 4 March 1996, the day before trial on the merits. That same day, 4 March 1996, appellant legally married Ms. Burruss. This marriage was not disclosed to the trial judge until the sentencing phase of the trial.

On 27 February 1996, obstruction of justice charges were preferred against appellant for attempting to influence Pok Sun's testimony in his upcoming court-martial during the period from on or about 1 January 1996 to on or about 15 February 1996. The military judge convicted appellant of obstruction of justice "by making statements and promises to her [Pok Sun], and by applying for a license to marry her, to induce her to wrongfully provide false information or testimony in his own case."

SULLIVAN, Judge (concurring):

I concur with the lead opinion because it makes sense and is a fair outcome in the circumstances of this case. Moreover, the result reached in the lead opinion is in line with the principles I outlined in *United States v. Davis*, 48 MJ 494, 496 (1998) (Sullivan, J., dissenting), and *United States v. Hawes*, 51 MJ 258, 261 (1999) (Sullivan, J., dissenting).

In the instant case, Sergeant First Class Eversole was charged with aggravated assault (kicking his first wife, Mrs. Eversole, in the head with his combat boots), adultery, bigamy, obstruction of justice (pressuring Mrs. Eversole about her testimony at the upcoming trial), and sodomy (with Mrs. Eversole, based solely upon her testimony). At trial, Eversole was acquitted of the sodomy charge but convicted of all other charges. He was sentenced to be reduced to the grade of E–1, to be discharged with a bad-conduct discharge, and to be confined for 6 months. On appeal, the Court of Criminal Appeals dismissed the aggravated assault conviction for factual insufficiency but affirmed the adultery, bigamy, and obstruction of justice convictions. Instead of remanding for a new sentencing hearing, the court below reassessed the sentence by affirming the same sentence of the trial judge, except for reducing the confinement to 3 months (really no actual relief because the confinement period had already been served at this point).

The record clearly shows that the aggravated assault charge was the only charge of

---

* Appellant was acquitted of the sodomy charges that were alleged to have occurred 4–6 May 1995

between him and Pok Sun.

violence in this case and, more importantly, that this charge was considered by the prosecution at trial to be the most serious charge. In his closing argument at the sentencing hearing, the trial counsel stated:

> Now, some misconduct is worse that others. Here the accused committed *adultery* as one of them. *Normally, that's an Article 15 type of offense, or about a stripe for sentencing purposes.* However, the circumstances in this case are a little more aggravated.

> . . . .So even in this day and age, adultery is sometime worth more than a stripe.

> Bigamy is even more serious. *Aggravated assault, more serious still. Bad-conduct discharge and confinement is appropriate for the aggravated assault alone.* Kicking someone in the head with combat boots on is very serious, and dangerous. Fortunately serious injury did not result, but it could have. . . .

> Finally *obstruction of justice.* The accused got—*or tried,* anyway, *to get Mrs. Eversole to recant.*

(R. at 930–31) (emphasis added). Thus, when the lower court dismissed what the prosecution considered a very significant portion of its criminal trial, it became extremely difficult for an appellate court to determine with any degree of certainty what sentence would have been given if the aggravated assault had not been part of the trial. *United States v. Sales*, 22 MJ 305, 308 (CMA 1986); *see also United States v. Taylor*, 51 MJ 390 (1999)

Moreover, to compound this difficulty in determining a new sentence, the record shows that the remaining obstruction of justice charge (appellant's attempt to get Mrs. Eversole to recant her pretrial claims about sodomy and assault) was clearly tied to the sodomy charge (acquitted at trial) and the aggravated assault charge (dismissed on appeal). In effect, one could view the obstruction of justice charge as the "offense" of appellant trying to get Mrs. Eversole in the pretrial stage to recant two claims of criminal activity (sodomy and assault) that were found to be without merit either at trial or on appeal. This unusual circumstance alone

would have made the substance and tone of appellant's sentencing argument completely different. Moreover, the record is also unusual with respect to the adultery and bigamy charges. The record shows appellant's Commander and First Sergeant knew (and by implication approved) that appellant moved away from Mrs. Eversole and started living with Susan (who he later married—the basis for the bigamy charge) while he was waiting for his divorce from his first wife, Mrs. Eversole. (R. at 613–14).

The record also shows a soldier with an unusual service record at the time of trial. Appellant was the "instructor of the year on this post in 1994" and "the instructor of the cycle in February of '96." (R. at 934). What is unusual is that appellant was tried on January 8, 1996, and March 5–8, 1996. As his defense counsel argued, "He hasn't given up over this 10–month period. He's continued to serve in the stellar manner that's marked his career." (R. at 934). The record also shows that at the time of sentencing, appellant was 60 days short of being eligible for his 20–year Army retirement.

In sum, there are two main factors that made this case a clear case for resentencing not reassessment: (1) the dismissal of a significant part of the Government's case at trial and (2) the record, which shows the unusual circumstances of appellant and the interconnection of the remaining charges. As I have said before:

> The court below may adjust the sentence based on an error only if it can discern the extent of the error's effect on the sentencing authority.

*United States v. Davis*, 48 MJ at 497 (Sullivan, J., dissenting), citing *United States v. Sales*, 22 MJ at 308.

> Robert Browning, the English poet, said: That's the wise thrush; he sings each song twice over.

> Lest you should think he never could recapture the first fine careless rapture.

*Home Thoughts From Abroad* (1845).

The Court of Criminal Appeals could never recapture a true sentence with certainty in a case like this. It could never capture the spirit, the mood, and the emotional appeal of

the facts in this case in the unique way a resentencing hearing could provide. Appellant deserves a fair sentence for his crimes, but the sentence must be one in the proper context of a new sentencing argument before an unbiased sentencing authority who will judge appellant on his significantly altered criminal case. Accordingly, I join the lead opinion in ordering a resentencing hearing and a new full clemency process.

CRAWFORD, Chief Judge (dissenting):

"In *no instance* ... may an appellate authority substitute its own judgment as to the appropriateness of the sentence, notwithstanding the error and its effect on the sentencing authority in arriving at that sentence." *United States v. Reed,* 33 MJ 98, 99 (CMA 1991), citing *United States v. Suzuki,* 20 MJ 248, 249 (CMA 1985)(emphasis added); *see United States v. Cook,* 48 MJ 434, 438 (1998); *see also United States v. Maxwell,* 45 MJ 406, 427 (1996). I concur completely with Judge Gierke that the majority has overlooked precedent and substituted its own judgment for that of the experienced, mature, and able judges of the Court of Criminal Appeals. *See United States v. Cook,* 46 MJ 37, 39 (1997); *United States v. Hawes,* 51 MJ 258, 260 (1999).

I am in total agreement with the firmly rooted legal principles set forth by the majority which must control review of this court-martial by both the Court of Criminal Appeals and our Court. We will overturn a sentence reassessment decision of a Court of Criminal Appeals only "to prevent obvious miscarriages of justice or abuses of discretion." *United States v. Jones,* 39 MJ 315, 317 (CMA 1994); *see Cook,* 48 MJ at 437; *United States v. Boone,* 49 MJ 187, 195 (1998). Having examined every aspect of this record of trial in light of our legal precedent, I can find not one iota of evidence to indicate an obscure, let alone an obvious miscarriage of justice, or any abuse of discretion in the Army Court's approval of a sentence that includes a punitive discharge.

This Court has consistently recognized the expertise of the judges on the Courts of Criminal Appeals to reassess sentences after finding error. *See United States v. Peoples,* 29 MJ 426, 429 (CMA 1990); *Jones,* 39 MJ at 317; *see generally United States v. Lacy,* 50 MJ 286 (1999). In fact, one can conclude that the Courts of Criminal Appeals judges are better skilled than this Court in the art of judicial sentencing because of their unparalleled responsibility under Article 66(c), UCMJ, 10 USC § 866(c), as well as their prior roles as advisors to convening authorities.

There has been no finding that the three Court of Criminal Appeals judges were inexperienced or otherwise unequal to the task of performing their statutory duties pursuant to Article 66. As we have previously opined: "It is undisputed that military judges are presumed to know the law and to follow it, absent clear evidence to the contrary.... Certainly, appellate judges of the Courts of Criminal Appeals are deserving of no less a presumption." *United States v. Mason,* 45 MJ 483, 484 (1997) (citations omitted). Accordingly, when three judges apply the principles that have been handed down by this Court to the facts of a particular case, *see United States v. Sales,* 22 MJ 305 (CMA 1986), where is the abuse of discretion?

Legal precedent is instructive. In *Cook,* 48 MJ at 434, the accused was convicted by a special court-martial of violating a lawful general regulation by possessing a proscribed knife and possession of marijuana with intent to distribute. The Army Court of Criminal Appeals set aside the knife offense, affirmed the marijuana offense, and affirmed the adjudged and approved sentence without further modification. Although we remanded the case for clarification, we unanimously concluded that a Court of Criminal Appeals could reassess the approved sentence (and by implication, affirm that sentence), using *Suzuki* and *Sales* guidelines, despite dismissal of a charge which arguably was as serious as the remaining charge. On remand, the Army Court of Criminal Appeals, in an unpublished opinion dated February 12, 1999, reassessed and affirmed the approved sentence.

In *United States v. Davis,* 48 MJ 494 (1998), the accused was convicted of assault

with intent to commit rape and use of marijuana. On appeal, the Air Force Court of Criminal Appeals found error, voided the conviction for assault with intent to commit rape, but affirmed the lesser-included offense of indecent assault. The lower court then reassessed and affirmed the adjudged sentence, even though the maximum punishment which appellant faced after the appellate court's action was reduced from 22 to 7 years. Again, the majority of this Court found no abuse of discretion or miscarriage of justice in Court of Criminal Appeals' action.

In *Hawes*, 51 MJ at 258, a second lieutenant was convicted of using marijuana and fraternization and sentenced to a dismissal, reprimand, and forfeiture of pay. On appeal, the Air Force Court of Criminal Appeals set aside the fraternization conviction but affirmed the adjudged sentence. Again, four members of our court found no abuse of discretion.

My analysis of this Court's cases from *Suzuki*, 20 MJ at 248, through *United States v. Taylor*, 51 MJ 390 (1999), impresses me with one fact: unless the Court of Criminal Appeals considers some improper, extraneous matter during its sentence assessment (*Peoples*, 29 MJ at 426), or attempts to fashion a sentence when the record is devoid of the evidence necessary to this process (*Boone*, 49 MJ at 187), we will not overturn the lower court's judgment. *See, e.g., Jones*, 39 MJ at 315; *United States v. Poole*, 26 MJ 272 (CMA 1988). Why are we reversing the Court of Criminal Appeals in this case?

The majority asks how any appellate authority could know, with any degree of certainty, what punishment the trial court would have awarded under these circumstances. It is not a question of certainty of sentence but one of certainty in magnitude. "[T]he standard for reassessment is not what sentence would be imposed at a rehearing, but rather, would the sentence have been 'at least of a certain magnitude.'" *Taylor*, 51 MJ at 391.

Appellant elected to be tried by military judge alone. In reassessing the sentence, the appellate court's challenge was to determine the maximum sentence a trial judge

(and former appellate judge), not a panel of members, would have imposed absent convicting appellant of aggravated assault. The court below knew that the trial judge had not only sentenced appellant to a bad-conduct discharge (despite appellant's pleas to save his retirement), but had also imposed the maximum term of confinement. It also knew the trial judge had emphasized on the record that appellant was to suffer no forfeiture of pay or allowances. As this Court has gained familiarity with the opinions and views of the various judges on the Courts of Criminal Appeals over the passage of time, I believe it is equally fair to infer that the same is true of the lower appellate courts and the trial judges whose records are reviewed. I can find absolutely no abuse of discretion in the Court's conclusion that the trial judge would have, *at least*, sentenced *this* appellant to a bad-conduct discharge and confinement for 3 months.

Appellant's defense counsel has set forth several alternative reasons why the lower court abused its discretion. None of these reasons are persuasive and in fact are misleading. Contrary to defense counsel's contention, trial counsel never argued that the aggravated assault charge was the most serious. As found by the Court of Criminal Appeals, "The gravaman of appellant's misconduct was his repeated attempts during a six-week period to obstruct justice (a five-year offense), not the one-time aggravated assault (a three-year offense)." Unpub. op. at 7.

Having failed to convince the Court below that adultery, bigamy, and obstruction of justice did not warrant a punitive discharge, counsel argues alternatively that the Court somehow treated appellant unfairly by reversing the aggravated assault conviction so as to preclude appellant from introducing an extraneous affidavit concerning the supposedly perjurous testimony of Pok Sun Eversole.

This approach, which the majority opinion countenances, 53 MJ at 134 n. 3, is equally nonmeritorious. The court below acknowledged the conflicting testimony concerning the obstruction of justice charge and said,

"[W]e do not believe appellant." Unpub. op. at 7. Whether Pok Sun Eversole tried to influence one of her friends improperly is absolutely irrelevant and should not in any way enter into this Court's consideration of whether the court below abused its discretion.

Finding no abuse of discretion, I have examined the reassessed sentence to ensure it is " 'appropriate in relation to the affirmed findings of guilty' so as to 'assure that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed.' " *Davis*, 48 MJ at 495, quoting *Poole*, 26 MJ at 274–75, quoting *Suzuki*, 20 MJ at 249.

I find no hint of a miscarriage of justice in this case. The military judge who imposed the sentence of this court-martial, the convening authority who approved the adjudged sentence without reduction, and the Court of Criminal Appeals had before them the evidence of appellant's misconduct as well as his service record. This service record shows, *inter alia*, an Army career spent at Fort Leonard Wood, Missouri, punctuated by a 3–year tour in Germany and a 12–month assignment in Korea; a reduction from sergeant to specialist in 1982; appellant's promotion to sergeant again 11 months later; a GT score of 118; and four awards of the Army Commendation Medal. I find nothing in appellant's service to our nation that either singularly or collectively convinces me that the lower court's reassessed sentence has resulted in a miscarriage of justice.

Finally, I note that appellant was on the *verge* of retirement eligibility. His right to retirement pay had not vested. Appellant's attempts to gain retirement status prior to the completion of 20 years of service were unsuccessful. There is no evidence to indicate that after serving his sentence to confinement, appellant returned to active duty and completed the period of time necessary to be retirement *eligible*. To speculate that this appellant has somehow suffered a miscarriage of justice because he was denied retirement benefits is as wrong as it would be to speculate that the Secretary of the Army would withhold retirement until the

Army successfully eliminated appellant under appropriate administrative procedures. In short, appellant has absolutely failed to convince me that he has suffered any miscarriage of justice.

Contrary to the opinion of the majority, this case does not involve "unusual circumstances." 53 MJ at 134. The convening authority referred the case to a special court-martial, empowered to judge a bad-conduct discharge. We need not speculate why these serious offenses were referred to a special court-martial. The facts show, though, that the military judge sentenced appellant to the jurisdictional maximum of confinement and awarded him a bad-conduct discharge as a result of his conviction for adultery, bigamy, aggravated assault, and obstruction of justice. We know that the lower court dismissed one of the charges and reassessed the sentence in accordance with the law of this Court. In so doing, the judges from the Court of Criminal Appeals found that a bad-conduct discharge would have been an inevitable sentence of the Court. *See Jones*, 39 MJ at 315.

As both the majority and the dissent agree, appellant was engaged in trickery, deceit, and deception in his efforts to subvert the court-martial process. In light of the evidence of record, to include the fact that appellant had served 19 years and 10 months of active duty prior to his court-martial, I can find no abuse of discretion by the Court of Criminal Appeals nor any miscarriage of justice. Accordingly, I dissent.

GIERKE, Judge (dissenting):

With the greatest respect for my colleagues in the majority, I fear that they have substituted their judgement for the court below, under the guise of finding an abuse of discretion. They have engaged in assessment of sentence appropriateness, a function within the exclusive province of the Court of Criminal Appeals, opining that the sentence was "all out of proportion to his offenses." *See United States v. Jones*, 39 MJ 315, 317 (CMA 1994). Finally, they have speculated, with no basis in the record, that the court below found itself in a "no-win situation." 53

MJ at 134. For all these reasons, I must dissent.

The court below concluded that the court-martial would have imposed a bad-conduct discharge even if appellant had not been convicted of an aggravated assault by kicking his ex-wife. The kicking was alleged to have occurred during a brawl between appellant's ex-wife and his paramour, with whom he had entered into a bigamous marriage. The court below reassessed the sentence, specifically citing *United States v. Sales*, 22 MJ 305 (CMA 1986), cut the period of confinement adjudged in half, and affirmed the bad-conduct discharge. *Sales* permits a Court of Criminal Appeals to reassess and affirm a sentence if it can be reasonably certain that the court-martial would have imposed a sentence of at least a certain level in the absence of the error at trial. 22 MJ at 308. The court below determined that appellant would have received a bad-conduct discharge even if he had not been convicted of kicking his ex-wife. My colleagues have concluded that affirming the bad-conduct discharge was an abuse of discretion.

Abuse of discretion means that the court below has a range of choice and will not be reversed as long as it stays within that range. *See Kern v. TXO Production Corp.*, 738 F.2d 968, 971 (8th Cir.1984); *United States v. Wallace*, 964 F.2d 1214, 1217 n. 3 (D.C.Cir.1992). Our duty is to ask "whether the decision [of the court below] is *legal* in the sense of being within the prescribed boundaries which define the area of discretion." *United States v. Siroky*, 44 MJ 394, 398 n. 1 (1996). In the area of sentence reassessment, the area of discretion enjoyed by a Court of Criminal Appeals is very broad. The legal test on appeal is whether the sentence reassessed by the Court of Criminal Appeals is "no greater than that which would have been imposed if the prejudicial error had not been committed." *United States v. Poole*, 26 MJ 272, 274 (CMA

1988).\* We will overturn that court's decision only "to prevent obvious miscarriages of justice or abuses of discretion." *United States v. Davis*, 48 MJ 494, 495 (1998), quoting *Jones*, 39 MJ at 317.

The evidence before the court-martial showed that appellant was near retirement, but that his conduct during the preceding 2 years had been less than stellar. In December of 1993, slightly more than 2 years before his court-martial, appellant was convicted in a civilian court of assaulting his wife and injuring her to the extent that she required hospitalization. The court-martial was aware that appellant was administratively reduced in rank because of his civilian conviction. The court-martial was aware that appellant became sexually involved with another woman, that he deceived that woman into believing that he was divorced, that he entered into a bigamous marriage with that woman in December of 1994.

The court-martial was aware that, after appellant was charged with adultery, bigamy, sodomy, and aggravated assault, he prepared a false statement for his ex-wife to sign. He applied for a marriage license with his ex-wife, in order to deceive his ex-wife into believing that he intended to remarry her, and to convince her to testify falsely at his court-martial.

Under these facts, the allegation that appellant kicked his ex-wife while she was engaged in a brawl with his paramour was an insignificant piece of appellant's pattern of deceit, deception, and efforts to pervert the criminal justice process. The court below applied the *Sales* test and found that appellant's offenses and disciplinary record made it reasonably certain that the court-martial would have imposed a bad-conduct discharge, even if appellant had not been convicted of kicking his ex-wife. Under these facts, I see no obvious miscarriage of justice and no abuse of discretion.

---

\* The majority relies in part on the decision of the convening authority to refer the charges to a special court-martial. In my view, what the convening authority did or would have done is irrelevant and is not part of sentence reassessment. The only question is what the court-martial would have done in the absence of the error.